UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. 1:17-cv-21468-RNS

LISA MOLLICONE and MILLIE LAND,
on behalf of themselves, all others similarly
situated, and the general public,

                        Plaintiffs,

        vs.

UNIVERSAL HANDICRAFT, INC., d/b/a
"Deep Sea Cosmetics" d/b/a "Adore Organic
Innovations;" and SHAY SABAG SEGEV,

                        Defendants.

           )
           )

**THIRD AMENDED COMPLAINT –
CLASS ACTION**

**DEMAND FOR JURY TRIAL**

Plaintiffs LISA MOLLICONE and  MILLIE LAND ("Plaintiffs"), individually and on behalf of themselves, all others similarly situated, and the general public, bring this action against SHAY SABAG SEGEV and UNIVERSAL HANDICRAFT, INC., doing business as "Deep Sea Cosmetics" doing business as "Adore Cosmetic Innovations" ("Adore").  The factual contentions in this complaint have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Plaintiffs intend for the exhibits filed with this complaint to become a part of this complaint for all purposes.  Plaintiffs allege the following on information, belief, or by investigation of their counsel, formed after an inquiry reasonable under the circumstances, as set forth in the preceding paragraphs:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act of 2005 or "CAFA") because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one class member is a citizen of a different state than one of the Defendants.

2.      This Court has personal jurisdiction over the Defendants because each defendant has certain minimum contacts with this forum and the assertion of jurisdiction over the Defendants would not offend traditional notions of fair play and substantial justice. Each of the Defendants have purposefully availed themselves to the laws and benefits of conducting business with residents of this forum and each of the Defendants have conducted substantial business in this forum. Moreover, the exercise of personal jurisdiction is proper pursuant to the Constitution and laws of the United States as well as Florida's "long-arm" statute. *See* Fla. Stat. Ann. § 48.193 (West).

3.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district because Plaintiff Land purchased the products at issue in this action from Defendants' retail store that is located within this judicial district at an Adore Organic Innovations store in Ft. Lauderdale, FL in or around the summer of 2015.  Plaintiff Land purchased approximately $550 total for her purchases of Adore products.

## NATURE OF THE ACTION

4.     Defendants manufacture, distribute, market, advertise, and sell a line of super premium cosmetics under their "Adore Organic Innovation" Product line.  According to Defendants, "Adore Organic Innovation uses the highest concentration of its *proven* Plant Stem Cell formula, combined with a blend of vitamins, essential oils, and organic plant extracts, to enable your skin's own stem cells to renew and slow the aging process.  **It's the most advanced breakthrough in anti-aging skin care today. And it's yours exclusively to adore.**" (emphasis in original).

5.     Included in the "Adore Organic Innovation" Product line are the Adore CELLMAX Products. The Adore CELLMAX Products are touted as a "remarkable formula" that are "proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to regenerate healthy texture."

6.     The CELLMAX Products include the "CELLMAX Redefining Facial Cream" ("Cream"), the "CELLMAX Elite Facial Serum" ("Serum"), and the "CELLMAX Superior Supplement Facial Thermal Mask" ("Thermal Mask") (collectively the "CELLMAX Products"). The CELLMAX Products are also sold together in a single kit called the "CELLMAX Kit." *See* Screenshots of Defendants' Website attached hereto as Ex. 1.



7.   Defendants market and sell at least twenty-two (22) cosmetics products under is "Adore Organic Innovation" Product Line that are substantially similar to the ADORE CELLMAX Products because they contain the same types of "plant stem cells" and make almost identical labeling claims that tout the anti-aging benefits of the Products by way of the purported "plant stem cells." The CELLMAX Products and the substantially similar products, which are more fully defined in this complaint, are collectively referred to as the "Adore Products."

8.   Defendants sell the Adore Products direct-to-consumers through their  brick and mortar retail locations and through their website, http://www.adorecosmetics.com/.

9.      Defendants claim through a comprehensive marketing campaign that their "exclusive Plant Stem Cell Formula" is "proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to regenerate healthy texture."

10.     Defendants' representations, however, are false and misleading. The Adore Products do not "halt the aging process" nor are the Adore Products "Proven to restore youthful appearance." Moreover, the plant stem cells within the Adore Products are not "exclusive." Instead, the "plant stem cells" in the Adore Products are really a proprietary ingredient called PhytoCellTec™ that is manufactured by Mibelle Biochemistry of Switzerland. PhytoCellTec™ is also an ingredient in several other cosmetics products, many of which are far less expensive than the super-premium Adore Products. *See* Ex. 2.

11.     Indeed, the purported "plant stem cells" contained in the Adore Products do not provide any type of anti-aging benefits because Mibelle admits that its PhytoCellTec™ *Malus Domestica* "is a patented liposomal preparation of apple stem cells derived from the 'Uttwiler Spätlauber', a rare Swiss apple variety." *See* Ex. 2.

12.     All credible evidence shows that Defendants' claims about plant stem cells in the Adore Products and their ability to interact with human skin stem cells to provide anti-aging benefits are false and deceptive. Moreover, Dr. Daniel Schmid, the research director of Mibelle, has actually admitted that "[t]he anti-ageing benefit for the skin after topical application could not be confirmed in a clinical trial." *See Could the extract from a rare Swiss apple REALLY get rid of your wrinkles?* THE DAILY MAIL (Nov. 2009), *attached hereto as* Ex. 3.

13.     Despite this statement from the research director of the company that manufactures the "plant stem cells" contained in the Adore Products, Defendants continue to market the Adore

Products as containing a "***proven*** Plant Stem Cell formula...to enable your skin's own stem cells to renew and slow the aging process." *See* Ex. 1 (emphasis added).

14.     In the liposomal preparation employed by Mibelle, intact plant stem cells simply no longer exist.  The plant stem cells are essentially "pulverized" by "homogenization" —application of mechanical force, such as with a rotary blender, to create a suspension that Mibelle describes as a "cell broth." Various ingredients are then added to this "cell broth," which results in only a mere "essence" of the original plant stem cells. According to Mabelle's patent application for PhytoCellTec, "the great advantage of this method is its simple and low-cost application." Moreover, the patent application itself concedes that "use for stimulation and protection of skin stem cells is not envisaged." *See* Patent Application for PhytoCellTec *attached hereto as* Ex. 4.

15.     In short, there is no possible way that the so-called "plant stem cells" in the Adore Products can "enable your skin's own stem cells to renew and slow the aging process." Nonetheless, Defendants charge a super-premium price for what is really a "simple and low-cost" cream that it describes as "the most advanced breakthrough in anti-aging skin care today."

16.     Worse yet, the Adore Products are being sold unlawfully. The United States Food and Drug Administration has warned the marketers of a similar cosmetics products containing PhytoCellTec that their products violate federal law. *See* FDA Warning Letter to Crescent Health Center, Inc., WL #28-16 (April 20, 2016), *attached hereto as* Ex. 5; FDA Warning Letter to Jaba Labs, LLC, (March 1, 2011), *attached hereto as* Ex. 6.

17.     Plaintiffs were misled by Defendants advertising and labeling of the Adore Products and would have not purchased the products (or would have only been willing to pay significantly

less for the Products) if they would have known that the Products do not provide the touted anti-aging benefits.

18.     Plaintiffs now seek redress on behalf of themselves and all other similarly situated consumers.  Plaintiffs seek to represent the consumer classes, or alternate subclasses, that are more fully defined in this complaint.

## PARTIES

19.     Plaintiff Lisa Mollicone is a resident of New Jersey who purchased various Adore Products from Defendants' retail location in Los Angeles, California, as further alleged in this Complaint.

20.     Plaintiff Millie Land is a resident of Minneola, Florida who purchased various Adore Products from Defendants' retail location in Ft. Lauderdale, Florida, as further alleged in this Complaint.

21.     Defendant Universal Handicraft, Inc. is a for-profit corporation organized under the laws of Florida that maintains its principal place of business at 1400 Alton Road, Suite 201, Miami Beach, Florida. *See* Ex. 7. At all times mentioned in this complaint, Defendant Universal was a seller, distributor, manufacturer, and advertiser of the Adore Products.

22.     Defendant Shay Sabag Segev is an individual believed to be residing in the State of Florida. Defendant Segev is the President of Defendant Universal Handicraft, Inc. and personally participated in, directed, and controlled the sales, distribution, manufacturing, and advertising of the Adore Products.   According  to  the  Articles  of  Incorporation  for  Universal  Handicraft,  Inc., Defendant Segev is the incorporator of Defendant Universal and also serves as one of its directors. *See* Universal Handicraft Inc.'s Articles of Incorporation attached hereto as Ex. 8.

## FACTUAL ALLEGATIONS

### A. <u>Defendants Capitalize on the Anti-Aging Products Market</u>

23.     Since 2001, Defendant Universal has manufactured and sold various cosmetic and skin care products. The company made a name for itself by developing products that utilize or contain, inter alia, natural Dead Sea minerals combined with complex peptides. In 2012, Universal developed a new and innovative line of products utilizing plant stem cell technology. *See* Emily Lambert, *The Deep Sea and Its Many Treasures*, SPECIALTY RETAIL REPORT (Fall 2010), *attached hereto as* <u>Ex. 9</u>.

24.      On or about June 28, 2012, Defendants launched this new line of products under the trademark ADORE ORGANIC INNOVATION. On or about October 29, 2012, Universal filed a trademark application with the U.S. Patent & Trademark Office ("USPTO") for the trademark ADORE ORGANIC INNOVATION. See Trademark Application for "Adore Organic Innovation," *attached hereto as* <u>Ex. 10</u>.

25.     "Adore Cosmetics is a leading purveyor of organic skin care products designed to harness the power of plant stem cells, botanical extracts and proven leading-edge anti-aging ingredients to restore the natural, youthful radiance of skin."

26.     Products bearing the ADORE ORGANIC INNOVATION are sold through kiosks, on-line through the www.AdoreCosmetics.com website, and through retail stores dedicated to ADORE ORGANIC INNOVATION products, including self-branded stores in shopping malls operating under the mark ADORE ORGANIC INNOVATION, such as the one depicted below:



27.     Defendant Segev has been called "The man behind it all" who started selling cosmetics products from a specialty retail kiosk at the Broward Mall in Plantation, Florida. "With wholesaling in mind, in 2004, Sabag returned to look for a factory and a lab that would be able to bring the most innovative high-end line of cosmetics to the market. His intention was to create cutting-edge Dead Sea cosmetics using the best technology and formulations available. Once his factory was secured, and his line was ready to market, retailers quickly jumped on board. Carts began to sprout up in Florida and spread throughout the East Coast, eventually making their way throughout the entire United States." "By the end of 2004, Deep Sea had approximately 60 carts along the East Coast retailing their products. By the second year, that number jumped to 150. And [by 2010], during the bustling holiday season, Deep Sea carts numbered 450. The product line has also grown, from 12 products to approximately 60 by Deep Sea Cosmetics Laboratories. Retailers carry an average of 40 different products on their units." *See* Ex. 9.

**B.     Defendants' False and Misleading Marketing of the Adore Stem Cell Products**

28.     Defendants has engaged in a uniform marketing and advertising campaign designed to convince consumers that its Adore Organic Innovation Products are scientifically and clinically proven to provide consumers with dramatic anti-aging results, "Representing the most advanced

#OrganicBased #AntiAging #SkinCare #StemCell #Technology," according to the Adore Instagram page.



29.     These false and misleading statements are disseminated in advertising, marketing, and promotional materials designed to induce consumers to purchase Stem Cell Products through the internet, through specialty retailer cosmetic carts in shopping malls, and at Defendants' various Adore retail locations.

30.     Plaintiffs allege that Defendants maintain Adore Retail Locations in approximately 24 U.S. Cities, including "Rodeo Drive Beverly Hills, California," Santa Barbara, California, San Francisco, California, and Los Angeles California. *See* Press Release, *Adore Cosmetics Opens New Store in Boston/Cambridge Area* (July 1, 2016), attached hereto as Ex. 11.

31.     On Defendants' website, www.adorecosmetics.com, Defendants make numerous anti-aging claims, purportedly backed by exhaustive scientific research. According to the Adore Website, "Adore Cosmetic's research teams have discovered that stem cells harvested from organic produce—which is generally richer in nutrients than mass-harvested fruits and vegetables found in most supermarkets—have profound impact on our skin. Using our patented plant stem cell formula, Adore

Cosmetics products take advantage of the epigenetic factors of resilient plant stem cells. In turn, this enables your skin's own stem cells to self-renew while slowing down the aging process. Stem cells have shown great potential to treat critical conditions like Alzheimer's and Parkinson's disease. Adore Cosmetics uses the same type of technology for beauty—using stem cells found in organic fruits and vegetables." See Screen Capture of Defendants' Website, *attached hereto* as Ex. 12.

32.     Moreover, according to the Adore Website, "Adore Cosmetic's research team kicked off their skin studies by knowing that stem cells account for just 2% to 7% of your skin's total cells…yet they're responsible for ALL of your skin's ability to heal itself. As time passes and environmental damage mounts, these stem cells lose effectiveness—and skin loses its vitality. Scientists from Adore Cosmetics reviewed independent research that pointed out that plants also have stem cells…and that some fruit stem cells act similarly to human stem cells. The team saw the potential of applying these plant stem cells to protect human skin cells." *See* Ex. 12.

33.     Next, according to the Adore Website, "Adore Cosmetic's researchers started experimenting by applying an extract of these organic plant cells to ethically collected human skin stem cells and then exposing them to UV light. They noticed that the skin cells experienced only a small loss of vitality—while half of those with no extract died. Adore Cosmetic's scientists also tested human skin cells for premature aging due to cellular DNA damage. While the cells incubated with the extract experienced a neutralization of the negative effects and increased their growth rate, the cells that weren't treated with the extract experienced a decrease in cellular growth." *See* Ex. 12.

34.     The anti-aging effects of the Adore Products, according to Defendants, were then validated in a clinical trial (hereinafter the "Adore Clinical Trial") when "Adore Cosmetics researchers later observed the same protective effect when they applied a cream containing the

extract to the crow's feet area of clinical trial volunteers. Four weeks later, wrinkle depth was reduced by as much as 15%.....Now Adore Cosmetics brings the anti-aging properties of this breakthrough to you in a luxurious line of skin care products." *See* Ex. 13.

35.     According to Defendants, "A few simple steps will help you use Adore Cosmetics to put these plant stem cells to work to defend your skin against the effects of aging and sunlight. Adore Cosmetics products have a specially calibrated concentration of plant stem cell formula available, along with a rich blend of vitamins, essential oils, organic flower extracts and organic vegetable protein. By blending plant cell power with proven nutrients for the skin, the Adore Cosmetics skin care line restores healthy-looking skin by:"

- "Protecting your skin's own stem cells, the key to its regenerative ability"
- "Preventing UV stress and environmental damage"
- "Delaying skin aging processes"
- "Promoting vitality and longevity of skin stem cells."

36.     Finally, Defendants claim, "Adore Cosmetics represents the most advanced breakthrough in anti-aging found in the beauty industry today—and it's yours exclusively to adore."

37.     Defendants also advertise and market the Adore Products on social media through YouTube videos, posts on Facebook, tweets on Twitter, and Pins on Pinterest. Defendants YouTube videos further tout the Adore products as being backed by scientific research.





38.     Defendants' social media pages also link to websites that further boast about the purported stem cell ingredients in the products. For example, "AdoreCosmeticsHowyouse.com displays instructional videos to help Adore Cosmetics customers properly use the products so as to obtain maximum benefit. It also includes product overviews, video tours of Adore Cosmetics stores and reviews of products from beauty bloggers.

**C.      How the Plant Stem Cells in the Adore Products Work According to Defendants**

39.     In an effort to further promote the science behind the Adore Products, Defendants have published and distributed the "Adore Organic Innovation Science- Stem Cell Technology" Brochure (the "Adore Science Brochure").    This publication is available for download from Defendants' website and is attached hereto as Ex. 13.



40.     According to the Adore Science Brochure, "Like humans, every plant has stem cells. But unlike humans, every plant cell has the potential to turn back into a stem cell and grow into an entirely new plant. If a plant is wounded, it forms what's known as callus tissue, in which normal cells become stem cells, which act to heal the wound. This is common in plants but not possible in humans. Researchers have long been interested in plants' ability to heal themselves via callus tissue, and even more so, certain plants' remarkable abilities to stay fresh long after being harvested and to protect themselves from prolonged exposure to UV rays that are harmful to living tissue. The question was, could these potent plant stem cells be used to protect human skin stem cells? The answer is yes." *See* Ex. 13.

41.     Defendants reach this definitive "yes" answer because "Researchers discovered that plant stem cells contain epigenetic factors similar to those of adult human stem cells. Applied in the right way, plant stem cells have a positive impact on the vitality of skin stem cells and their proper functioning. *By growing callus cells in selected plant tissue <u>under special conditions</u>*, researchers have created a new biotechnology that generates plant stem cells that safely help protect human skin stem cells from chronological aging, UV stress and other environmental damage. We call this new biotechnology Plant Stem Cell formula." *See* Ex. 13 (emphasis added).

42.     Furthermore, according to Defendants, "The development of a new test method, called 'progenitor cell targeting,' made it possible to isolate stem cells, which look the same as other skin cells, from the human epidermis for test purposes. *Using this method, these epidermal stem cells are grown in Petri dishes*. During this process, each healthy stem cell divides, forming a colony of cells, which is visible to the naked eye and can be counted. Stem cells that have aged and are weakened do not die, but they no longer form colonies. Researchers were thus able to prove that

using plant stem cells increases the longevity and the vitality of human skin stem cells. Extensive studies have shown that [the] Plant Stem Cell formula increases the vitality and efficiency of all essential skin cells and improves skin's resistance." <u>Ex. 13</u> (emphasis added).

43.     The Adore Science Brochure also notes that stem cells within the Adore Products are a propriety blend of plant stem cells called "PhytoCellTecTM" that is manufactured by the Mibelle Biochemistry Group of Switzerland. *See* <u>Ex. 13</u>.

### D.     The Adore Products Contain the Mibelle PhytoCellTec™ Patented Active Ingredient

44.     According to the Mibelle Website, "Mibelle Biochemistry Switzerland designs and develops unique, high-quality actives for the beauty industry which are based on naturally derived compounds and extensive scientific expertise."

45.     Among its "unique, high-quality actives for the beauty industry" is the "PhytoCellTec$^{TM}$" *Malus Domestica* active ingredient that is contained in the Adore Products.

46.     Mibelle claims that "PhytoCellTec Malus Domestica is a patented liposomal preparation of apple stem cells derived from the 'Uttwiler Spätlauber', a rare Swiss apple variety. These apple stem cells are rich in epigenetic factors and metabolites, which ensures the longevity of skin cells. PhytoCellTec™ Malus Domestica has been shown to protect skin stem cells while also delaying the senescence of hair follicles. PhytoCellTec™ Malus Domestica succeeds in delivering a revolutionary anti-aging performance for real rejuvenation." *See* Ex. 2.

47.     Moreover, "PhytoCellTec™ Malus Domestica was the first ingredient based on plant stem cells on the cosmetic market. The topical use of PhytoCellTec™ Malus Domestica is patented in the USA (US 9,155,916 B2 / US 8,580,320 B2) and in Korea (10-1470632)."

- 15 -

### E. Affirmative Evidence Shows that Defendants' Advertising of the Adore Products is Provably False and Likely to Mislead Reasonable Consumers

#### 1. A Mibelle Researcher Admits that the Efficacy of PhytoCellTec Plant Stem Cells "Could Not be Confirmed in a Clinical Trial."

48.     An article in The Daily Mail titled "Could the extract from a rare Swiss apple REALLY get rid of your wrinkles?" featured an interview with "Dr. Daniel Schmid, research director of Mibelle Biochemistry, the Swiss lab which developed PhytoCellTec Malus Domestica." He "insists that his study shows his apple stem cell extracts have been 'shown to improve the maintenance of the stem cells characteristics of epidermal stem cells.'" However, "he admits: '*The anti-ageing benefit for the skin after topical application could not be confirmed in a clinical trial.*'" *See* Ex. 3.

49.     Therefore, Defendants' claims that the Adore Products are "Proven" to provide anti-aging benefits are literally false- as was admitted by the research director at the company that manufactures the Plant Stem Cell ingredient in the Adore Products.

#### 2. Leading Scientists Agree that Plant Stem Cells Like in the Adore Products cannot Provide Anti-Aging Benefits

50.     As noted by S. Jay Olshansky, a distinguished professor at the University of Illinois-Chicago's School of Public Health who has written extensively about aging, "If someone is promising you today that you can slow, stop or reverse aging, they're likely trying hard to separate you from your money." *See* David Carey, *Boomers will be Spending Billions to Counter Aging*, USA Today (Aug. 22, 2011), *attached hereto* as Ex.14.

51.     Professor Liam Dolan, the "Sheradian Professor of Botany at Oxford University, who specialises in studying plant cells," reviewed the advertising claims for the PhytoCellTec ingredient

and concluded, "'I don't see how plant stem cells could interact with human stem cells in this way." *See* Ex. 3.

52.     Paolo U. Giacomoni, who was formerly the executive director of research at Estee Lauder, and who received a Laurea in Atomic Physics from the University of Milan and a Ph.D. in Biochemistry from the University of Paris, is critical of the role of stem cells in cosmetics. "Stem cell technology is still far from biomedical applications, let alone cosmetic ones," states Giacomoni. *See Healing Beauty: More biotechnology cosmetic products that claim drug-like properties reach the market*, EMBO Reports (Nov. 2008), *attached hereto* as Ex. 15.

53.     "Stem cells that are in contact with skin are not really alive anymore," said Margaret Foster Riley, a law professor and expert on food and drug law at the University of Virginia. "So I don't really see how a stem cell product is working on the skin. I suppose some of them may actually work in a way that cosmetics work otherwise, because of moisturizing capability. But it's not stem cell capability that's working there to the degree we know how stem cells work." *See Stem cell lotions: Cutting edge or pure hype?* USA Today (Sept. 1, 2015), *attached hereto* as Ex. 16.

54.     "'Potions and lotions may in fact work really well, but at the end of the day, let's be data-driven, so the consumer doesn't have to worry about whether they think it might work,' said Stanford professor Michael Longaker, an expert in plastic surgery and regenerative medicine." *See* Ex. 14.

55.     A spokesperson for yet another Plant Stem Cell cosmetics company has "conceded that if you 'put an actual human stem cell on the skin, it wouldn't do anything.'" *See* Ex. 16.

56.     In an article that appeared in Dermatology Today titled Short On Evidence, Dr. Patricia Farris, M.D., a board-certified dermatologist and dermatologie surgeon in Metairie, La.

stated, "We don't have proof in human skin yet that when these skincare products are applied to the skin that they can really boost stem cell activity, and, more importantly, make the skin look younger," Dr. Farris says "Most of the research on stem cell products has been done in vitro and needs to be translated to the clinical setting with human subjects." *See* Ex. 17.

57.    In an article titled Direct-to-Consumer Stem Cell Marketing, Professor of Biology, Dr. Douglas Sipp has stated, "Charlatans are drawn to frontiers. The scientific frontier of stem cell biology has attracted an unusual amount of dubious business activity, despite the paucity of credible evidence for the efficacy of these cells in the treatment of indications for which they are marketed." Ex. 18.

58.    Sam Most, a facial reconstructive surgeon at Stanford School of Medicine, says "stem-cell-related cosmetic marketing is following the time-tested tactic of climbing aboard the bandwagon of hot topics, from collagen to FDA-approved Botox injections... They don't just sit there on the shelf and last," he says. "To do any good, the ingredients would have to remain stable for weeks or months at room temperature, get past the epidermal layer, go into the right cells, and exert the proper stimulation once reaching their destination." *See* Bryan Nelson, A Superficial Success, NATURE REPORTS STEM CELLS (Jan.15, 2009), *attached hereto* as Ex. 19.

59.    The totality of evidence shows that the Plant Stems Cells in cosmeceutical products are not effective at providing anti-aging benefits and thus the Adore Products are likely to mislead reasonable consumers.

   3.  Defendants' Claims are Patently False Because There Are No Living Plant Stem Cells
       in the Adore Products

60.    The Adore Science Manual describes an in vitro test using live Plant Stem Cells in a "new test method, called 'progenitor cell targeting,' [that] made it possible to isolate stem cells,

which look the same as other skin cells, from the human epidermis for test purposes. Using this method, these epidermal stem cells are grown in Petri dishes. During this process, each healthy stem cell divides, forming a colony of cells, which is visible to the naked eye and can be counted. Stem cells that have aged and are weakened do not die, but they no longer form colonies. Researchers were thus able to prove that using plant stem cells increases the longevity and the vitality of human skin stem cells." *See* <u>Ex. 13</u>.

61.    Even assuming the above method is credible (it is not), it still fails to account for the fact that no actual Living Plant Stem Cells are in the Adore Products. Defendants' statements are not only likely to mislead reasonable consumers, but rather Defendants' advertising statements are also patently false.

62.    The Mibelle patent for the PhytoCellTec Ingredient describes the production process of the PhytoCellTec ingredient and states that "In order to obtain an extract containing the Whole essence of the cultivated cells, the cells are solubilized by means of liposomes. The main component of this method is the use of high pressure homogenization of the Whole cell broth together With a liposome preparation. The great advantage of this method is its simple and low-cost application." See Ex. 4.

63.    In a liposomal preparation intact cells no longer exist.  Cells are disrupted by "homogenization" (application of mechanical force, such as a rotary blender, to a suspension) in the presence of various ingredients used by Mibelle, particularly lecithin, which breaks up cell membranes into small globular fragments called liposomes. Liposomes are much smaller than the extracted cells and are comprised of fragments of the cell membrane folded around microscopic cavities that contain molecules of cellular origin.   Liposomes made from apple callus cultures thus

may contain compounds derived from apple stem cells, as well as the chemicals used in their preparation.  PhytoCellTec™ Malus Domestica does not, however, contain actual stem cells, as falsely claimed in the ingredient lists of the Adore Products.

64.     The patent notes that "Suitable high pressure homogenizators are commercially available on the market" and specifically notes that destruction of the cell membranes occurs. *See* Ex. 4.

65.     Next, "All preservative agents of natural or synthetic origin allowed for cosmetics, such as e.g. phenoxyethanol, benzoic acid, propionic acid, alcohol or silver chloride, can be used as preservative agents." However, "In order to additionally protect the extract from oxidation, antioxidants, such as e.g. ascorbic acid or tocopherol, may be added." *See* Ex. 4.

66.     Moreover, "the described method allows the addition of still further substances useful in the preparation or cosmetic product. Once all compounds are added, the mixture has to be stirred in order to dissolve the preservative agents and other components. This may be done e.g. by means of a paddle mixer, a homogenization rod or by pumping through static mixing elements." *See* Ex. 4.

67.     Thus, the resulting PhytoCellTec mixture does not resemble Living Plant Stem Cells whatsoever.   Defendants' representations that the Adore Products somehow contain "Plant Stem Cells" that can interact with human stem cells to provide anti-aging benefits is patently false.

## F.   Defendants have Copied the Advertising Ideas and Style of Advertisements of the Premium J'ADORE Product Line by Christian Diore

68.     Defendants' Adore products are likely to mislead reasonable consumers that the products are connected to or affiliated with the J'Adore product line by Christian Diore.

69.     Dior first introduced a fragrance product under the mark J'ADORE in 1999. Today, the J'ADORE line includes not only perfume products in the form of eau de parfum, eau de toilette

and voile de parfum, but also skin care products in the form of soap, shower gel, body milk and body crème.

70.    Dior markets and sells its fragrance and skin care products under the J'ADORE brands throughout the United States, including through Dior boutiques and the DIOR website (http:/www.dior.com), through third-party department stores such Macy's and Bloomingdale's, and through specialty beauty retailers such as Sephora.

71.    As a result of Dior's extensive advertising and sale of goods under the J'ADORE Marks, the marks, when used in connection with fragrance and skin care products, have become exclusively associated with Dior, and consumers recognize fragrance and skin care products bearing the J'ADORE Marks as coming from Dior.

72.    Defendants are targeting the very consumers who are familiar with and who are customers of Dior's products offered under the J'ADORE brands.

73.    Defendants have copied the advertising ideas and style of advertisements of the premium J'ADORE Products to the detriment of Plaintiff and the class members.

74.    Defendants' use of the Adore brand is likely to mislead reasonable consumers, who mistakenly assume that Defendants and the products offered under the Adore brand are associated with or sponsored or approved by Dior. Defendants' use of the Adore brand and trademarks is likely to continue to cause confusion, as reasonable consumers will assume that Defendants' goods are authorized by, endorsed by, associated with, or are otherwise connected with Dior or its J'ADORE products.

75.    Because Defendants have no affiliation with Dior, their  use of the Adore brand in connection with skin care products and related goods and services is likely to cause confusion, cause

mistake, or deceive consumers as to the source, sponsorship or approval of Defendants' goods and services and, specifically, to cause consumers to believe that Defendants' goods and services are sponsored by, affiliated with, approved by or otherwise connected with Dior when such is not the case.

### G. Specific Misrepresentations and Warranties on the Product Packaging

76.    For purposes of this section, each statement that appears in quotation marks ("") below create affirmative representations about the Products and also create express and implied warranties that were relied on by Plaintiff and the Class members in deciding to purchase the products. The quoted statements are hereinafter referred to as the "Representations and Warranties. The Adore CELLMAX Superior Facial Thermal Mask.



**CELLMAX Superior Facial Thermal Mask**
Treat your skin to the most advanced anti-aging science available today with CELLMAX Superior Facial Thermal Mask from Adore Organic Innovation. This unique self-heating mask not only smoothes deep lines and wrinkles but also encourages your skin to renew itself. As it gently warms to the touch, the mask prepares your skin to absorb our highest concentration of breakthrough anti-aging Plant Stem Cell formula. We enrich this anti-aging nutrient with extracts of chamomile, linden blossom and other all-natural ingredients to promote smooth skin texture. Vitamin E revives skin's appearance, leaving it fresh, clean and vibrant, while promoting youthful elasticity. All combined, it gives you phenomenal anti-aging action that helps reduce the look of wrinkles in moments while encouraging your skin to respond naturally by amplifying collagen levels that help restore youthful tone.



77.     The label of the CELLMAX Superior Facial Thermal Mask states the following:

"Treat your skin to the most advanced anti-aging science available today with CELLMAX Superior Facial Thermal Mask from Adore Organic Innovation. This unique self-heating mask not only smoothes deep lines and wrinkles but also encourages your skin to renew itself. As it gently warms to the touch, the mask prepares your skin to absorb our highest concentration of breakthrough anti-aging Plant Stem Cell formula. We enrich this anti-aging nutrient with extracts of chamomile, linden blossom and other all-natural ingredients to promote smooth skin texture. Vitamin E revives skin's appearance, leaving it fresh, clean and vibrant, while promoting youthful elasticity. All combined, it gives you phenomenal anti-aging action that helps reduce the look of wrinkles in moments while encouraging your skin to respond naturally by amplifying collagen levels that help restore youthful tone."

78.     Defendants website also makes the exact same Representations and Warranties about

the CELLMAX Superior Facial Thermal Mask as described in the preceding paragraph.

**The Adore CELLMAX Redefining Facial Cream**



79.     The label for the CELLMAX redefining Facial Cream states the following:

"Formulated with revolutionary CELLMAX, featuring the highest concentration of our exclusive Plant Stem Cell formula, today's most advanced anti-aging biotechnology for skincare. This remarkable formula is proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to regenerate healthy texture. To amplify its age-defying properties, we infuse it with extracts of chamomile, linden blossom and other all-natural flora to regenerate tone and promote smoother appearance. Meanwhile, Allantoin deeply hydrates by binding moisture to dry skin. This phenomenal anti-aging cream helps erase the look of deep wrinkles and restore youthful texture, leaving skin fresher, harmonized and renewed. You'll see results with every application."

80.     Defendants' website also makes the same Representations and Warranties that are

quoted in the preceding paragraph concerning the CELLMAX Redefining Facial Cream.

**The Adore CELLMAX Elite Facial Serum**



81.     The label for the CELLMAX Elite Facial Serum states the following:

"With the passage of time, skin cells suffer damage from aging and environmental elements. This extraordinary facial serum from Adore Organic Innovation helps halt and reverse the aging process using CELLMAX, a breakthrough combination of age-defying active ingredients. It features the highest concentration of our exclusive Plant Stem Cell formula, today's most advanced anti-aging biotechnology for skincare. This remarkable formula is proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to regenerate healthy texture. Its anti-aging action is increased with a special complex of Vitamin C, which regenerates the skin's appearance cell by cell, promoting production of collagen for skin firmness and elasticity. This is suspended in a formulation of jojoba seed oil, which makes it readily absorbed to minimize fine lines and wrinkles. Vitamin E revitalizes each layer of your skin, preventing damage and protecting skin from future harm, while Bisabolol soothes the skin and prevents irritation. With each application, this innovative serum promotes skin suppleness and works to restore what time and the elements take away"

82.     Defendants' website also makes the same Representations and Warranties that are quoted in the preceding paragraph concerning the CELLMAX Elite Facial Serum.

**The CELLMAX Kit**

83.     Defendants also sell the CELLMAX Thermal Mask, Cream, and Serum in a single kit.



84.     The label of the CELLMAX kit similarly makes the same Representations and Warranties that are described on the packaging for the individual CELLMAX Products.



85.     Plaintiff Mollicone read and relied on the above-quoted Representations and Warranties in deciding to purchase the CELLMAX Kit.

**H.**     **The "Substantially Similar" Adore Organic Innovation Stem Cell Products**

86.     Defendants also manufacture, market, and distribute several other products under the Adore Organic Innovation product line that also contain plant stem cells and that make substantially similar Representations and Warranties regarding the efficacy of the plant stem cells.

87.     Plaintiffs allege that the following products are "substantially similar" to the CELLMAX Products:

| | Product | Substantially Similar Representations and Warranties | List Price |
|---|---|---|---|
| 1 | Essence Facial Detoxifying Cleansing Cream | "The key is our exclusive Plant Stem Cell formula, proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to renew skin texture." | $99.95 |
| 2 | Essence Facial Toner | "It starts with our exclusive Plant Stem Cell formula, proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to regenerate healthy texture." | $109.95 |
| 3 | Essence Facial Milk | "The secret is our exclusive Plant Stem Cell formula, proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to regenerate healthy texture." | $109.95 |
| 4 | Essence Facial Cleanser | "Formulated with Adore Organic Innovation's exclusive plant stem cell formula – featuring Malus Domestica, fruit cell culture (stem cells) that are proven to protect and restore your skins own stem cells." | $89.95 |
| 5 | Snow White Facial Brightening Cream | "It begins with Adore Organic Innovation's exclusive Plant Stem Cell formula, proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to regenerate healthy texture." | $495.95 |
| 6 | Dreams Multi Active Night Cream | "It starts with our exclusive Plant Stem Cell formula, proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to regenerate healthy texture." | $495.95 |

| | Product | Substantially Similar Representations and Warranties | List Price |
|---|---|---|---|
| 7 | Performer Sculpting Neck Serum | "The key is our exclusive Plant Stem Cell formula, which protects your skin's own stem cells and encourages them to renew texture." | $495.95 |
| 8 | Essence Facial Serum | "The key is our exclusive Plant Stem Cell formula, which protects your skin's own stem cells and encourages them to renew texture. We amplify this breakthrough anti-aging nutrient's action with a special compound of Palmitoyl Tetrapeptide, which regenerates the skin's appearance, cell by cell." | $749.95 |
| 9 | Essence Facial Hydrating Cream - normal to oily skin | "It includes our exclusive Plant Stem Cell formula, proven to protect your skin's own stem cells and encouraging them to renew texture." | $199.95 |
| 10 | Essence Facial Hydrating Cream - normal to dry skin | "It includes our exclusive Plant Stem Cell formula, proven to protect your skin's own stem cells and encouraging them to renew texture." | $199.00 |
| 11 | Advanced Firming Eye Cream | "…starts with our exclusive Plant Stem Cell formula, proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to regenerate healthy texture." | $589.95 |
| 12 | Advanced Firming Eye Serum | "…starts with our exclusive Plant Stem Cell formula, proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to regenerate healthy texture." | $595.95 |
| 13 | Skin Tightening Instant Face Lift | "By harnessing the power of these plant stem cells, we bring anti-aging effects to your own skin cells, increasing your skin's regenerative powers."<br><br>"Within seconds of applying, fine lines and wrinkles disappear, courtesy of the innovative Plant Stem Cell Formula containing organic fruit stem cells . . ." | $1,195.00 |

| | Product | Substantially Similar Representations and Warranties | List Price |
|---|---|---|---|
| 14 | Golden Touch Magnetic Facial Mask | "This pure element triggers profound receptivity in skin cells to the renewing power of our exclusive Plant Stem Cell technology, known to restore youthful appearance by protecting your skin's own stem cells and stimulating regeneration of luminous texture." | $995.00 |
| 15 | Essence Facial Collagen Mask | "Proven to restore youthful appearance, advanced plant stem cells protect your skin's own stem cells and encouraging them to regenerate healthy texture." | $699.95 |
| 16 | Golden Touch 24k Techno-Dermis Facial Mask | "This pure element triggers profound receptivity in skin cells to the renewing power of our exclusive Plant Stem Cell technology, known to restore youthful appearance by protecting your skin's own stem cells and stimulating regeneration of luminous texture." | $3,300.00 |
| 17 | Nourishing Hand and Body Lotion - Original | ". . . with Adore Organic Innovation's organic Plant Stem Cell formula, proven to turn back time by protecting your skin's own stem cells and encouraging them to restore youthful texture." | $34.95 |
| 18 | Nourishing Hand and Body Lotion - Blossom | ". . . Adore Organic Innovation's organic Plant Stem Cell formula, proven to turn back time by protecting your skin's own stem cells and encouraging them to restore youthful texture." | $34.95 |
| 19 | Nature - Intensive Body Butter | "It contains Adore Organic Innovation's exclusive Plant Stem Cell formula, proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to regenerate healthy texture." | $89.95 |
| 20 | Spirit – Calming Body Butter | "It starts with Adore Organic Innovation's exclusive Plant Stem Cell formula, a powerful concentration proven to revitalize your skin by encouraging its own stem cells to activate new growth." | $89.95 |
| 21 | Spirit - Calming Body Peeling Scrub | "The key is Adore Organic Innovation's exclusive Plant Stem Cell formula, designed to protect and restore your skin's own stem cells . . ." | $79.95 |

| | Product | Substantially Similar Representations and Warranties | List Price |
|---|---|---|---|
| 22 | Nature - Intensive Body Peeling Scrub | "The key is Adore Organic Innovation's exclusive Plant Stem Cell formula, designed to protect and restore your skin's own stem cells . . ." | $79.95 |

88.     Each of these products are substantially similar in that they contain, on information and belief, PhytoCellTec ingredient manufactured by Mibelle Biochemistry of Switzerland.   As set forth above herein, these  products are liposomal preparations derived from apple or grape callus cells and therefore do not contain any plant stem cells even if callus cells are present at the beginning of Mibelle's manufacturing process.

## PLAINTIFFS' EXPERIENCE WITH THE ADORE PRODUCTS

### Plaintiff Mollicone

89.     Plaintiff Lisa Mollicone is a resident of New Jersey who purchased the Adore CELLMAX Kit containing the CELLMAX Cream, the CELLMAX Serum, and the CELLMAX Thermal Mask from an Adore Organic Innovations retail store located at 332 Rodeo Drive, Beverly Hills, CA 90210.

90.     Plaintiff Mollicone purchased the CELLMAX Kit in or around June of 2014 while in California and had the products shipped from Defendants' retail store to her home in New Jersey. Plaintiff Mollicone purchased the CELLMAX Kit in reliance on Defendants Representations and Warranties described above, including that the purported plant stem cells in the products would provide proven anti-aging benefits.

91.     In addition to the Adore CELLMAX kit, Plaintiff Mollicone also purchased substantially similar products, which Plaintiff believes included the "Adore Essence Facial Peeling

Gel," the "Adore Dreams Multi-Active Night cream," and the "Adore Essence Facial Detoxifying Cream Cleanser." Plaintiff alleges that Defendants' business records will reveal the exact products that Plaintiff purchased that are substantially similar to the CELLMAX Products.

92.     Plaintiff Mollicone read and relied on statements made on the packaging of the products and on statements that were made on Defendants' website, adorecosmetics.com, which was shown to Plaintiff Mollicone by one of Defendants' sales representative from one of Defendants' in-store computers. Plaintiff believes that the representations made on the Adore website are exactly the same, or substantially similar to, the representations that are made on the product labels.

93.     Plaintiff paid approximately $1,000 total for her purchases of the Adore Products. Plaintiff Mollicone would not have purchased the products at all, or would have paid less for the products, had she known the truth about the Adore products.

94.     Plaintiff would consider purchasing the Adore Products again if they provided the claimed anti-aging benefits and if Defendants disclosed to material facts about the products. Plaintiff may once again purchase the Adore Products if they were labeled truthfully and in a manner not likely to mislead reasonable consumers.

95.     Plaintiff Mollicone did not discover the truth about the Defendants' false and misleading advertising scheme described herein until around the time that Plaintiff sent a pre-suit notice letter to Defendants. Plaintiff and the Proposed Class Members are laypersons, lacked the knowledge and experience to understand how the Products' labels were deceptive or false, and information regarding the false or deceptive advertising was solely within Defendants' possession and control. Thus, the delayed discovery exception postpones accrual of the limitations period for all members of the putative classes.

96.     Defendants were constructively and actually aware that the Products were ineffective for their advertised use. Nevertheless, Defendants continued to sell the Adore Products. Therefore, at all relevant times, Defendants had a duty to inform consumers that the Products were not effective at providing the advertised anti-aging benefits, but Defendants knowingly concealed that fact from members of the putative classes herein. Accordingly, the fraudulent concealment exception tolls the statute of limitations on all claims herein.

97.     Additionally, or in the alternative, because Defendants' misrepresentations and deception continues up to the present, the continuing violation exception tolls all applicable statues of limitations for all members of the putative classes until Defendants' unlawful advertising and labeling is corrected.

**Plaintiff Land**

98.     Plaintiff Millie Land is a resident of Minneola, Florida who purchased the Adore Essence Facial Hydrating Cream and other Adore anti-agining products in or around the summer of 2015 from an Adore Organic Innovations retail store located at The Galleria at Fort Lauderdale shopping mall in Fort Lauderdale, Florida.

99.     Plaintiff Land paid approximately $550 total for her purchases of the Adore Products. Plaintiff Land would not have purchased the products at all, or would have paid less for the products, had she known the truth about the Adore products.

100.    Plaintiff Land did not discover the truth about the Defendants' false and misleading advertising scheme described herein until around the time that Plaintiff sent a pre-suit notice letter to Defendants. Plaintiff and the Proposed Class Members are laypersons, lacked the knowledge and experience to understand how the Products' labels were deceptive or false, and information

regarding the false or deceptive advertising was solely within Defendants' possession and control. Thus, the delayed discovery exception postpones accrual of the limitations period for all members of the putative class.

101.    Defendants were constructively and actually aware that the Products were ineffective for their advertised use. Nevertheless, Defendants continued to sell the Adore Products. Therefore, at all relevant times, Defendants had a duty to inform consumers that the Products were not effective at providing the advertised anti-aging benefits, but Defendants knowingly concealed that fact from members of the putative classes herein. Accordingly, the fraudulent concealment exception tolls the statute of limitations on all claims herein.

102.    Additionally, or in the alternative, because Defendants' misrepresentations and deception continues up to the present, the continuing violation exception tolls all applicable statues of limitations for all members of the putative classes until Defendants' unlawful advertising and labeling is corrected.

## **DEFENDANTS ARE JOINTLY LIABLE**

103.    **Agency Allegations:** At all times mentioned in this Complaint, Defendant Segev was an agent of Defendant Universal Handicraft, Inc. and in doing the acts alleged herein, was acting within the course and scope of such agency.  Defendant Universal Handicraft, Inc. had actual and/or constructive knowledge of the acts of Defendant Segev, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts, and/or retained the benefits of said wrongful acts. As the president of Defendant UHI, Defendant Segev directs and controls the marketing and labeling of the Adore Products.

104. **Aiding and Abetting:** At all times mentioned in this complaint, each Defendant knew that each and every other Defendant was engaged in the unlawful acts subject to this complaint. Each Defendant gave substantial assistance or encouragement to the other Defendant who committed the predicate unlawful acts by supplying that Defendant with the means or instrumentalities to commit the unlawful acts, which were substantial factors in causing harm to Plaintiffs and the Classes.

105. **Alter Ego Liability and Joint Enterprise Liability:** Defendant Segev established Universal Handicraft, Inc. and the Adore Product Line for an illegal purpose: to perpetrate fraud. Defendant Segev utilizes Universal Handicraft as a vehicle to commit misleading marketing practices as a means of promoting misbranded stem cell products that do not perform as advertised.

106. Defendant Segev is liable for the conduct of Universal Handicraft, Inc. because Defendant Segev abused its organizational form as corporation to accomplish fraudulent objects, namely, to fraudulently promote the sale of Adore Products, to conceal the proceeds of those frauds, and to frustrate the ability of victims to obtain redress for the fraud.

107. Defendant Segev totally dominates and controls Universal Handicraft, Inc. to such an extent that the independence of UHI is a sham. Defendant Segev founded UHI and it is essentially wholly-owned by Defendant Segev, who also completely dominates the management and control of Defendant UHI as its president.

108. Defendant Segev was the incorporator of UHI when it first formed in 2001.

109. Defendant Segev has served as President of UHI at all times during the class period.

110.    Defendant Segev is currently one of only two members of the UHI board of directors. Defendant Segev has also previously served as the sole member of the board of directors prior to 2011.  Defendant Segev is also the controlling shareholder of UHI.

111.    Defendant Segev has operated Universal Handicraft, Inc. in a manner that there is such a unity of interest and ownership between Defendant Segev and Universal Handicraft, Inc. that any sense of independence is non-existent. In fact, Defendant Segev exercises total operational control and decision-making power over all business activities at Universal Handicraft, including but not limited to product origination and development; product marketing, sales, and promotion; accounting and finance; product distribution; public and media relations; business development and strategy; vendor and third-party relationship; and contract negotiations. Defendant Segev actively manages and oversees all business operations of Universal Handicraft, Inc. and retains final decision-making power.

112.    **Corporate Officer Liability:**  "A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985) (internal quotations omitted); *see also United States v. Reis*, 366 Fed.Appx. 781, 782 (9th Cir. 2010) (citing Restatement (Third) of Agency § 7.01 (2006)); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) (holding that a corporate officer or director "cannot hide behind the corporation where he is an actual participant in the tort") (internal quotations omitted)).

113.    Defendant Segev actually participated in the conduct alleged in this complaint and Plaintiff alleges that Defendant Segev is personally liable for all unlawful acts described herein

because he authorized, directed, or participated in such acts notwithstanding the fact that he acted as

an agent of the corporation. For example, Segev was quoted making the following Representations

and Warranties about the Adore Products: "Stem Cells Prevent Aging," "Scientists have found that

the stem cells of apples are similar to the stem cells in human beings," "through the use of

biotechnology, science is able to utilize these fruit stem cells using them in cosmetics so they are

able to penetrate the skin." *See* Emily Lambert, *Adore Organic: Lifting the Face,* Specialty Retail

Report (Fall 2013), *attached hereto as* Ex. 20*.*

## CLASS ACTION ALLEGATIONS

114.    Plaintiffs seek to certify the following classes or alternative subclasses:

**The Nationwide Class[1]**

All persons who purchased the Adore CELLMAX Products and the Substantially Similar
Products within the United States for personal and household use and not for resale from the

---

[1] In ruling on Defendants' prior motion to dismiss, the California Court held that Plaintiff Mollicone lacks standing to assert California's consumer protection laws on behalf of a nationwide class. *See Mollicone v. Universal Handicraft, Inc.*, No. 216CV07322CASMRWX, 2017 WL 440257, at *9 (C.D. Cal. Jan. 30, 2017). However, the Court relied on California's choice of law rules in reaching that conclusion. *Id.*  California has adopted the "place of the wrong" choice-of-law test and "the place of the wrong [is] the state where the misrepresentations were communicated to  the plaintiffs, not the state where the intention to misrepresent was formed or where the misrepresented acts took place." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 593-94 (9th Cir. 2012). However, Florida applies the "most significant relationship" test. *Melton v. Century Arms, Inc.*, No. 16-21008-CIV, 2017 WL 1063449, at *3 (S.D. Fla. Mar. 20, 2017). Under that test "Courts consider four types of contacts to determine which state has the most significant relationship to the matter: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (2) the domicile, residence nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." *Id.* Because UHI is headquartered in Florida and all decisions concerning the deceptive marketing scheme described herein took place in Florida, the state of Florida has the most significant relationship to this action and the application of Florida law to a nationwide class would be fair and equitable.

time the products entered into the stream of commerce until the date class notice is disseminated. Excluded from the Class are Defendants' officers, directors and employees.

**The Florida Subclass**

All persons who purchased the Adore CELLMAX Products and Substantially Similar Products within Florida for personal and household use and not for resale from the time the products entered into the stream of commerce until the date class notice is disseminated. Excluded from the Class are Defendants' officers, directors and employees.

**The California Subclass**

All persons who purchased the Adore CELLMAX Products and Substantially Similar Products within California for personal and household use and not for resale from the time the products entered into the stream of commerce until the date class notice is disseminated. Excluded from the Class are Defendants' officers, directors and employees.

115.    The Classes comprise of many thousands of consumers throughout the nation. The Class is so numerous that joinder of all members of the Class is impracticable. There are questions of law and fact common to the Class. The common questions include:

      (a)    whether Defendants' alleged conduct violates public policy;

      (b)    whether the alleged conduct constitutes violations of the laws asserted herein;

      (c)    whether Defendants engaged in false or misleading advertising;

      (d)    whether plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

      (e)    whether plaintiff and Class members are entitled to an award of punitive damages; and

      (f)    whether plaintiff and Class members are entitled to declaratory and injunctive relief.

116.     Plaintiffs' claims are typical of the claims of the proposed Class, and plaintiffs will fairly and adequately represent and protect the interests of the proposed Class. Plaintiffs do not have any interests antagonistic to those of the Class. Plaintiffs have retained counsel competent and experienced in the prosecution of this type of litigation. The questions of law and fact common to the Class members, some of which are set out above, predominate over any questions affecting only individual Class members.

117.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. The trial and the litigation of plaintiff's claims are manageable.

118.     Unless a class is certified, Defendants will retain monies received as a result of their conduct that was taken from Plaintiffs and proposed Class members. Unless a class-wide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

119.     Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

## COUNT I

### Breach of Express Warranty
### (On Behalf of Plaintiffs and the Nationwide Class and Florida and California Subclasses)

120.     Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

121.     Plaintiffs, and each member of the Classes, formed a contract with Defendants at the time Plaintiffs and the other members of the Class purchased Adore Products.  The terms of that

contract include the promises and affirmations of fact made by Defendants on its product labels and through its marketing campaign, as described above.  This product labeling and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiffs and the members of the Class on the one hand, and Defendants on the other.

122.    All conditions precedent to Defendants' liability under this contract, including notice, have been performed by Plaintiffs and the Class.

123.    Defendants breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing the product which could provide the promised benefits as described above.

124.    As a result of Defendants' breach of its contract and warranties, Plaintiffs and the Classes have been damaged in the amount of the purchase price of Adore Products at issue.

## COUNT II

### Unjust Enrichment
### (On Behalf of Plaintiffs and the Nationwide Class and Florida and California Subclasses)

125.    Plaintiffs reallege and incorporates by reference the allegations contained in paragraphs above as though fully set forth herein.

126.    As a result of the unlawful conduct described herein, Defendants have been unjustly enriched at the expense of Plaintiffs and the other members of the Class.

127.    Specifically, Defendant's unfair and unlawful actions, as described herein, have enabled Defendants to receive money and other benefits in violation of the law at the expense of Plaintiffs and the other members of the Class.

128.     Defendants' receipt and retention of this financial benefit is unfair and improper under the circumstances.

129.     As such, Defendants should be required to disgorge the money retained as a result of its unjust enrichment.

## COUNT III

### Negligent Misrepresentation
### (On Behalf of Plaintiffs and the Nationwide Class and Florida and California Subclasses)

130.     Plaintiffs reallege and incorporates by reference the allegations contained in paragraphs above as though fully set forth herein.

131.     Defendants had a duty to disclose to Plaintiffs and the Class Members correct information as to the quality and characteristics of the Adore Products because Defendants were in a superior position than Plaintiffs and Class Members such that reliance by Plaintiffs and Class Members were justified. Defendants possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision. Specifically, Defendant's unfair and unlawful actions, as described herein, have enabled Defendants to receive money and other benefits in violation of the law at the expense of Plaintiffs and the other members of the Class.

132.     Defendants' receipt and retention of this financial benefit is unfair and improper under the circumstances.

133.     During the applicable Class Period, Defendants negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Adore Products, including the purported anti-aging benefits.

134.     Defendants made such false and misleading statements and omissions through a wide range of advertisement medium described herein, with the intent to induce Plaintiffs and Class Members to purchase the Products.

135.     Defendants were careless in ascertaining the truth of its representations in that they knew or should have known that Plaintiffs and the Class Members would not realize the alleged benefits represented by Defendants.

136.     Plaintiffs and the Class were unaware of the falsity in Defendants' misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

137.     Plaintiffs and the Class Members would not have purchased the Products or paid as much for the Products if the true facts had been known.

## COUNT IV

### Intentional Fraud
### (On Behalf of Plaintiffs and the Nationwide Class and the Florida and California Subclasses)

138.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs above as though fully set forth herein.

139.     Defendants made material representations to Plaintiffs and the Class members that the Adore Products are "proven" effective at providing anti-aging benefits and the other Representations and Warranties described in this complaint. However, the Adore Products are not effective at providing the anti-aging benefits because the plant stem cells in the Adore Products are no longer activated when mixed with other substances and added to cosmetics products like the Adore

Products. Moreover, plant stem cells are incapable of interacting with human skin cells in a way that will provide anti-aging benefits.

140.    Defendants have willfully deceived Plaintiffs and the class members with the intent to induce Plaintiffs and the class members to alter their positions to their injury or risk, and are liable for the damages suffered by Plaintiffs and the Class.

141.    Defendants made the Representations and Warranties knowing that the Representations and Warranties were in fact not true.

142.    Alternatively, Defendants made the Representations and Warranties with no reasonable grounds for believing them to be true.

143.    Plaintiffs and the Class altered their position in reliance on Defendants' Representations and Warranties in that Plaintiffs and the Class would not have purchased the Adore Products, or would have paid much less for the products, had they known that the Representations and Warranties concerning the Adore Products were in fact not true.

144.    Defendants have intended to defraud the public, and the nationwide class defined herein, and are therefore deemed to have defrauded every member of the nationwide class, all of whom were actually misled by Defendants' deceit.

145.    Defendants are responsible for their material misrepresentations described above even if they did not intend any particular class member to rely on the misrepresentations because Defendants made the representations to groups of persons and the public at large, intending or reasonably expecting that it would be repeated to Plaintiffs and the Class members who are consumers that were actually misled into purchasing the products.

146.     Plaintiffs and the Class, by purchasing the products, justifiably relied on Defendants' false and misleading Representations and Warranties. If Plaintiffs and the class would have known the truth concerning the false representations, they would not have purchased the Adore Products at all, or would have paid much less for the adore products.

147.     As a direct and proximate result of Defendants' intentional misrepresentations and deceptive acts, Plaintiffs and the members of the Class were induced to pay for the worthless Adore Products. Plaintiffs and the Class would not have purchased the Adore Products at all because the Products are being unlawfully sold in violation of California law and unlawful products, like the Adore Products, have a fair market value of $0.00.

148.     Alternatively, Plaintiffs and the Class allege that the Adore Products are priced at a super-premium in comparison to other cosmetics products and that the premium price is commanded in the marketplace as a direct result of the false and misleading advertising tactics described in this complaint. This alternative premium-price measure of damages can be calculated on a uniform class-wide basis and Plaintiffs and the class' out-of-pocket loss is the amount of the premium price that the Adore Products command.

149.     Defendants' conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for Plaintiffs and Class members' rights and interests. Defendants' conduct thus warrants an assessment of punitive damages, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

## COUNT V

### VIOLATIONS OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
CAL. CIV. CODE §§ 1750, *et seq.*
**(On Behalf of Plaintiff Mollicone and the California Subclass)**

150.    Plaintiff Mollicone realleges and incorporates by reference the allegations contained in paragraphs above as though fully set forth herein.

151.    Plaintiff Mollicone brings this Count individually and on behalf of the California Subclass.

152.    Plaintiff Mollicone and the class members are consumers who purchased the anti-aging Products for personal, family, or household purposes. Accordingly, Plaintiff and the California Class Members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d). Plaintiff Mollicone and the California Class Members are not sophisticated experts with independent knowledge of the formulation or efficacy of the Adore Products.

153.    At all relevant times, Adore Products constituted "goods" as that term is defined in Cal. Civ. Code § 1761(a).

154.    At all relevant times, Defendants were "persons" as that term is defined in Civ. Code § 1761(c).

155.    At all relevant times, Plaintiff Mollicone's purchase of Adore Products, and the purchases of other Subclass members, constituted "transactions" as that term is defined in Cal. Civ. Code § 1761(e). Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

156.    The policies, acts, and practices described in this Complaint were intended to and did result in the sale of Adore Products to Plaintiffs and the Class. Defendants' practices, acts, policies, and course of conduct violated the CLRA §1750 et seq. as described above.

157.    Defendants represented that Adore Products have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have in violation of Cal. Civ. Code § 1770(a)(5).

158.    Defendants represented that the Products were of a particular standard, quality, and grade, when they were of another, in violation of California Civil Code § 1770(a)(7). Defendants violated California Civil Code §§ 1770(a)(5) and (a)(7) by representing that Adore Products were effective at preventing or reducing the signs of aging.

159.    Defendants represented that Adore Products were of a particular standard or quality when Defendants were aware that they were of another in violation of § 1770(a)(7) of the CLRA.

160.    Defendants advertised Adore Products with the intent not to sell them as advertised in violation of § 1770(a)(9) of the CLRA. Defendants did not intend to sell the Adore Products as advertised because they knew that the Products would not effectively prevent the signs of aging. Defendants knew that the Products' so-called active ingredients are ineffective.

161.    Defendants have passed off the Adore Products as those of another in violation of § 1770(a)(1) of the CLRA by representing that the Adore Products are affiliated, connected with, or have the approval of Dior.

162.    Defendants have misrepresented the source, sponsorship, or approval of the Adore Products by representing that the products are sourced by, have the sponsorship or approval of Dior.

163.     Defendants have made false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions by claiming that the actual retail prices for the products are in the amounts stated on Defendants' website when really the products are uniformly sold at lower prices.

164.     Plaintiff Mollicone and the California Subclass Members suffered injuries caused by Defendants' misrepresentations because: (a) Plaintiff and the Class Members would not have purchased Adore Products if they had known the true facts; (b) Plaintiff and the Class paid a price for the Products due to the mislabeling of the Adore Products; and (c) Adore Products did not have the level of quality, effectiveness, or value as promised.

165.     Prior to the filing of this Complaint, a CLRA notice letter was served on Defendants which complies in all respects with California Civil Code § 1782(a). A copy of Plaintiff Mollicone's letter is attached as Exhibit 21. In April 2016, Plaintiff Mollicone sent Defendants a letter via certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and must correct, repair, replace, or otherwise rectify the goods alleged to be in violation of § 1770. Defendants were further advised that in the event that the relief requested had not been provided within thirty (30) days, Plaintiff Mollicone would bring an action for damages and other relief pursuant to the CLRA. On April 28, 2016, Defendants received the letter.

166.     Plaintiff Mollicone seeks damages, restitution, injunctive relief, and Attorneys' fees and costs for Defendants' violations of the CLRA.

## COUNT VI
## VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW
### CAL. BUS. & PROF. CODE §§ 17500, *et seq.*
### (On Behalf of Plaintiff Mollicone and the California Subclass)

167.     Plaintiff Mollicone and the California Subclass members incorporate by reference and

re-allege each and every allegation set forth above as though fully set forth herein.

168.     Plaintiff Mollicone brings this Count on behalf of the California Subclass.

169.     California's FAL (Bus. & Prof. Code §§17500, et seq.) makes it "unlawful for any

person to make or disseminate or cause to be made or disseminated before the public in this state, . . .

in any advertising device . . . or in any other manner or means whatever, including over the Internet,

any statement, concerning . . . personal property or services, professional or otherwise, or

performance or disposition thereof, which is untrue or misleading and which is known, or which by

the exercise of reasonable care should be known, to be untrue or misleading."

170.     Throughout the Class Period, Defendants committed acts of false advertising, as

defined by the FAL, by using false and misleading statements to promote the sale of Adore Products,

as described above.

171.     Defendants knew or should have known through the exercise of reasonable care that

their statements were untrue and misleading.

172.     Defendants' actions in violation of the FAL were false and misleading such that the

general public is and was likely to be deceived.

173.     As a direct and proximate result of these acts, consumers have been and are being

harmed. Plaintiff and members of the Class have suffered injury and actual out-of- pocket losses as a

result of Defendants' FAL violation because: (a) Plaintiff and the Class would not have purchased

Adore Products if they had known the true facts regarding the effectiveness and contents of the products; (b) Plaintiff and the Class paid a price due to the misrepresentations of Adore Products; and (c) Adore Products did not have the promised quality, effectiveness, or value.

174.     Plaintiff Mollicone brings this action pursuant to Bus. & Prof. Code § 17535 for injunctive relief to enjoin the practices described herein and to require Defendants to issue corrective disclosures to consumers. Plaintiff and the California Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

**COUNT VII**
**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE §§ 17200,** *et seq.*
**(On Behalf of Plaintiff Mollicone and the California Subclass)**

175.     Plaintiff Mollicone and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

176.     The UCL, Bus. & Prof. Code § 17200 et seq., provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair deceptive, untrue or misleading advertising ...." The UCL also provides for injunctive relief and restitution for UCL violations.

***Unlawful***

177.     "By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." Cel-

Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

178.    Virtually any law or regulation – federal or state, statutory, or common law – can serve as a predicate for an UCL "unlawful" violation. Klein v. Chevron U.S.A., Inc., 202 Cal. App. 4th 1342, 1383 (2012).

179.    Defendants violated the "unlawful prong" by violating the CLRA, the FAL, the California Sherman Law, as well as by breaching express and implied warranties as described herein.

180.    Defendants have violated California Health and Safety Code § 111730, which provides that "Any cosmetic is misbranded if its labeling is false or misleading in any particular."

181.    Defendants have violated California Health and Safety Code § 111765, which states that "It is unlawful for any person to manufacture, or sell any cosmetic that is misbranded."

182.    Defendants have violated California Health and Safety Code § 111770, which provides that "It is unlawful for any person to misbrand any cosmetic."

183.    Defendants have violated California Health and Safety Code § 111775, which states that "it is unlawful for any person to receive in commerce any cosmetic that is misbranded, or to deliver or proffer for delivery any cosmetic."

184.    As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiff and members of the Class have suffered injury and actual out-of- pocket losses as a result of Defendants' UCL "unlawful prong" violation because: (a) Plaintiff and the Class would not have purchased Adore Products if they had known the true facts regarding the effectiveness and

contents of the products; (b) Plaintiff and the Class paid a price due to the misrepresentations of Adore Products; and (c) Adore Products did not have the promised quality, effectiveness, or value.

185.     Pursuant to Bus. & Prof. Code §17203, Plaintiff and the California Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

### ***Fraudulent***

186.     The UCL, Bus. & Prof. Code § 17200 et seq., provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising ...."

187.     Defendants' conduct, described herein, violated the "fraudulent" prong of the UCL because Defendants represented that Adore Products were proven to provide anti- aging benefits.

188.     Plaintiff Mollicone and the California Class Members are not sophisticated experts with independent knowledge of the formulation or efficacy of the Plant Stem Cell Products, and they acted reasonably when they purchased Defendants' Products based on their belief that Defendants' representations were true.

189.     Defendants knew or should have known, through the exercise of reasonable care, that their representations about the Products were untrue and misleading.

190.     As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiff and members of the Class have suffered injury and actual out-of- pocket losses as a result of Defendants' UCL "fraudulent prong" violation because: (a) Plaintiff and the Class would

not have purchased Adore Products if they had known the true facts regarding the effectiveness and contents of the Products; (b) Plaintiff and the Class paid a price due to the misrepresentations of Adore Products; and (c) Adore Products did not have the promised quality, effectiveness, or value.

191.    Pursuant to Bus. & Prof. Code §17203, Plaintiff and the California Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

### ***Unfair***

192.    The UCL, Bus. & Prof. Code § 17200 et seq., provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising ...."

193.    Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendants' conduct is unfair in that the harm to Plaintiff and the Class arising from Defendants' conduct outweighs the utility, if any, of those practices.

194.    Defendants' practices as described herein are of no benefit to consumers who are tricked into paying exorbitant prices for an ordinary wrinkle cream.

195.    As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendants' UCL "unfair prong" violation because: (a) Plaintiff and the Class would not

have purchased Adore Products if they had known the true facts regarding the effectiveness and contents of the products; (b) Plaintiff and the Class paid a price due to the misrepresentations of Adore Products; and (c) Adore Products did not have the promised quality, effectiveness, or value.

196.    Pursuant to Bus. & Prof. Code §17203, Plaintiff, and the California Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs prays for a judgment:

A.    Certifying the Class as requested herein;

B.    Awarding Plaintiffs and the proposed Class members damages;

C.    Awarding restitution and disgorgement of Defendants' revenues to Plaintiffs and the proposed Class members;

D.    Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

E.    Awarding Plaintiffs and the Class punitive damages;

F.    Ordering Defendants to engage in a corrective advertising campaign;

G.    Awarding attorneys' fees and costs; and

H.      Providing such further relief as may be just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: August 2, 2017                                    Respectfully submitted,


                                                         */s/ Cullin O'Brien*
                                                         CULLIN O'BRIEN
                                                         Florida Bar No. 0597341
                                                         cullin@cullinobrienlaw.com
                                                         **CULLIN O'BRIEN LAW, P.A.**
                                                         6541 NE 21st Way
                                                         Ft. Lauderdale, FL 33308
                                                         Telephone: (561) 676-6370
                                                         Fax: (561) 320-0285


                                                         **LAW OFFICES OF RONALD
                                                         A. MARRON, APLC**
                                                         RONALD A. MARRON
                                                         ron@consumersadvocates.com
                                                         MICHAEL HOUCHIN
                                                         mike@consumersadvocates.com
                                                         651 Arroyo Drive
                                                         San Diego, CA 92103
                                                         Telephone:     (619) 696-9006
                                                         Facsimile:     (619) 564-6665
                                                         *Attorneys for Plaintiffs and the Proposed
                                                         Classes*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have this 2nd, day of August 2017, electronically filed the forgoing with the Clerk of the Court using CM/ECF system, which automatically sends an electronic notifications to all counsel of record and other CM/ECF participants.

_/s/Cullin O'Brien_____
CULLIN O'BRIEN