**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 17-21468-CIV-RNS

| | |
|---|---|
| LISA MOLLICONE and MILLIE LAND,<br>on behalf of themselves, all others similarly<br>situated, and the general public,<br><br>       Plaintiffs,<br><br> vs.<br><br><br>UNIVERSAL HANDICRAFT, INC.,<br>D/B/A "Deep Sea Cosmetics" d/b/a<br>"Adore Organic Innovations;" and<br>SHAY SABAG SEGEV,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>/ |

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION**
**SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

Plaintiffs Lisa Mollicone and Millie Land ("Plaintiffs") and Defendants Universal Handicraft, Inc. and Shay Sabag Segev ("Defendants") respectfully and jointly move for preliminary approval of a class action settlement and certification of a settlement class regarding all persons in the United States who purchased Adore Products marketed as containing a plant stem cell formula anytime from September 29, 2012 until the date the Class Notice is first disseminated in this action, and state as follows:

1

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF LAW ........................................................................................................... 1

I. INTRODUCTION ............................................................................................................... 1

II. PROCEDURAL HISTORY ................................................................................................. 2

III. SUMMARY OF THE PROPOSED SETTLEMENT ........................................................ 4

   A. THE SETTLEMENT CLASS ................................................................................................. 4

   B. SETTLEMENT CONSIDERATION ......................................................................................... 5

      1. Monetary Relief................................................................................................................ 5

      2. Non-Monetary Relief......................................................................................................... 5

   C. THE NOTICE PROGRAM AND SETTLEMENT ADMINISTRATION ............................................ 6

   D. CLAIMS PROCESS ............................................................................................................ 7

   E. OPT-OUT AND OBJECTION PROCEDURES ........................................................................ 7

   F. RELEASE OF CLAIMS ....................................................................................................... 8

   G. CLASS COUNSEL'S FEES AND EXPENSES AND PLAINTIFFS' SERVICE AWARDS .................... 9

IV. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL........... 9

   A. THE LEGAL STANDARD FOR PRELIMINARY APPROVAL ...................................................... 9

   B. THE SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY APPROVAL ...................... 10

   C. THE SETTLEMENT AGREEMENT IS THE PRODUCT OF GOOD FAITH, INFORMED AND ARM'S
LENGTH NEGOTIATIONS ..................................................................................................... 11

   D. THE FACTS SUPPORT A PRELIMINARY DETERMINATION THAT THE SETTLEMENT IS FAIR,
ADEQUATE AND REASONABLE ............................................................................................ 12

      1. Likelihood of Success at Trial ....................................................................................... 12

      2. Range of Possible Recovery and the Point on or Below the Range of Recovery at Which
a Settlement is Fair......................................................................................................... 12

      3. Complexity, Expense, and Duration of Litigation.......................................................... 13

      4. Stage of Proceedings ...................................................................................................... 13

   E. CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ........................................ 14

      1. Numerosity Under Rule 23(a) ........................................................................................ 14

      2. Commonality Under Rule 23(a) ..................................................................................... 14

i

*3. Typicality Under Rule 23(a)* ............................................................................. 15

*4. Adequacy Under Rule 23(a)* ............................................................................. 15

*5. Predominance and Superiority Under Rule 23(b)* ........................................... 15

F. The Court Should Approve the Proposed Notice ................................................. 15

G. Proposed Schedule of Events ................................................................................ 16

V. CONCLUSION ......................................................................................................... 17

**MEMORANDUM OF LAW**

## I.    INTRODUCTION

After hard-fought litigation with multiple rounds of written discovery, depositions, third-party discovery, extensive motion practice, and a full-day of mediation, the Parties reached this proposed Settlement. The Settlement Agreement establishes both monetary and non-monetary relief and requires Defendants to pay up to $200,000.00 in Settlement Administration and Notice Administration costs.[1] If approved, the Settlement will bring an end to what has been, and likely would continue to be, highly contentious and costly litigation centered upon unsettled legal questions.

Therefore, this joint motion seeks the entry of an order providing for, among other things:

1. Preliminary Approval of the Settlement;

2. Preliminary certification of a Settlement Class and appointment of the Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

3. Approval of the Settlement Administrator, Notice Administrator, and Escrow Agent;

4. Approval of the Notice program describing:

    a. The Settlement and the Settlement Class members' rights with respect to the Settlement;

    b. The proposed Release of claims;

    c. Class Counsel's request for attorneys' fees and expenses, as well as a Service Award for the Class Representatives; and

    d. The procedure for opting-out of or objecting to the Settlement;

5. Approval of the Claims process; and

6. The scheduling of a Final Approval Hearing to consider Final Approval of the Settlement.

The Parties' proposed Settlement is exceedingly fair, and well within the range of preliminary approval for several reasons. First, it provides relief for Settlement Class Members where their recovery, if any, would otherwise be uncertain, especially given Defendants' ability and willingness to continue its vigorous defense of the case. Second, the Settlement was reached

---

[1] A copy of the Settlement Agreement ("Agreement") is attached to the concurrently-filed Declaration of Ronald A. Marron in Support of the Parties' Joint Motion for Preliminary Approval ("Marron Decl.") as Exhibit 1.

1

only after first engaging in substantial discovery, motion practice, and extensive arm's-length negotiations, including a full-day of mediation before a neutral mediator. Third, the Settlement was not conditioned on any amount of attorneys' fees for Class Counsel or Service Awards for Plaintiffs, which speaks to the fundamental fairness of the process. For all of these reasons, and as further described below, Plaintiffs respectfully request that the Court preliminarily approve the Settlement.

## II. <u>PROCEDURAL HISTORY</u>

This action commenced on September 29, 2016 when Plaintiff Lisa Mollicone filed a class action complaint against Defendants in the United States District Court for the Central District of California. *See Lisa Mollicone v. Universal Handicraft, Inc. et al.*, Case No. 2:16-cv-07322-CAS-MRW (C.D. Cal.) (DE No. 1). Plaintiff Mollicone then filed a First Amended Complaint on December 19, 2016. (*Id.* at DE No. 25). The gravamen of Plaintiffs' claims is that Defendants made false and misleading representations regarding the anti-aging properties of cosmetic products that Defendants manufacture, market, and sell. (*Id.*). Defendants advertise several products within their Adore Organic Innovation line as containing a "proven Plant Stem Cell formula ... to enable your skin's own stem cells to renew and slow the aging process." (*Id.* ¶ 6). The Adore Organic Innovation line includes certain CELLMAX Products—including a cream, serum, and mask, sold together as a CELLMAX Kit—that are touted as "proven to restore youthful appearance [.]" (Id. ¶¶ 7–8). Plaintiff Mollicone alleged that Defendants manufacture, market, and distribute at least 22 products that are substantially similar to the CELLMAX products because they contain the same type of "plant stem cells" and use almost identical labeling. (*Id.* ¶ 9). Plaintiff Mollicone brought several claims against Defendants, including violations of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code. §§ 17500 *et seq.*, and violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*

On December 30, 2016 Defendants Universal Handicraft, Inc. and Shay Sabag Segev each filed a Motion to Dismiss Plaintiff Mollicone's First Amended Complaint (*Id.* at DE Nos. 28 and 29). Plaintiff Mollicone opposed Defendants' Motions on January 9, 2017 (*Id.* at DE Nos. 31 & 32) and Defendants filed reply briefs on January 13, 2017 (*Id.* at DE Nos. 37 & 38). On January 30, 2017, the Honorable Christina A. Snyder Granted in Part and Denied in Part

Defendants' Motions to Dismiss. (*Id.* at DE 40). Pursuant to the Court's January 30, 2017 Order, Plaintiff Mollicone filed a Second Amended Complaint on February 21, 2017 (*Mollicone*, Case No. 2:16-cv-07322-CAS-MRW at DE No. 42). Defendant UHI filed an Answer to the Second Amended Complaint on March 7, 2017 (*Id.* at DE No. 46). Then, on March 20, 2017, Defendants filed a Motion to Transfer Venue to the Southern District of Florida. (*Id.* at DE No. 50). That motion was granted by Judge Snyder on April 17, 2017. (*Id.* at DE No. 57).

Following the transfer of the *Mollicone* action, a related class action was filed in Southern District of Florida by Plaintiff Millie Land on May 25, 2017. *See Land v. Universal Handicraft, Inc.*, et al., Case No. 1:17-cv-21947-CMA (S.D. Fla.) (DE No. 1). The *Land* complaint contains similar factual allegations as the *Mollicone* complaint and was brought on behalf of a Florida class of consumers. (*Id.*). On June 12, 2017, Plaintiffs Lisa Mollicone and Millie Land filed a motion to consolidate the two related actions. (*See Lisa Mollicone v. Universal Handicraft, Inc. et al.*, Case No. 1:17-cv-21468-RNS (DE No. 82)). Defendants did not oppose that Motion. (DE No. 89). On July 27, 2017, this Court granted the Parties' stipulation to consolidate the *Mollicone* and *Land* cases and directed Plaintiffs to file a Third Amended Complaint. (DE No. 94). On August 2, 2017, Plaintiffs filed the operative Third Amended Complaint. (DE No. 95), which asserts seven causes of action, including: (1) Breach of Express Warranty; (2) Unjust Enrichment; (3) Negligent Misrepresentation; (4) Intentional Fraud; (5) California Legal Remedies Act (CLRA); (6) California False Advertising Law (CFAL); and (7) California Unfair Competition Law (CUCL). The Third Amended Complaint, asserts that the classes of consumers at issue include: (1) Nationwide; (2) Florida; and (3) California classes. *Id.*, at ¶ 114. On August 16, 2017, Defendants each filed Motions to Dismiss the Third Amended Complaint for Failure to State a Claim, Motions to Strike the Third Amended Complaint, and Motions for a More Definite Statement. (DE Nos. 97 & 98). On November 29, 2017, this Court denied Defendants' Motions. (DE No. 108). Thus, on December 13, 2017, Defendants filed their Answer and Affirmative Defenses to the Third Amended Complaint, which denies wrongdoing and liability and thoroughly sets forth thirty-eight affirmative defenses. (DE 109, at pp. 34-54).

The Parties have engaged in extensive discovery as to the claims and defenses in this action, including multiple rounds of written discovery, depositions, third-party discovery, and extensive motion practice. On January 15, 2018, the Parties mediated the claims and defenses at

3

issue in this case before David H. Lichter, Esq. Mr. Lichter is an experienced and well-respected mediator who has mediated and arbitrated more than 1700 matters.  Through Mr. Lichter's guidance and negotiations, the Parties were able to reach the material terms of the Settlement Agreement, which is discussed in further detail below.

III.   **SUMMARY OF THE PROPOSED SETTLEMENT**

The following is a summary of the material terms of the proposed Settlement.

**A.  The Settlement Class**

The proposed Settlement establishes a Settlement Class comprised of:

All persons in the United States who purchased Adore Products marketed as containing a plant stem cell formula anytime from September 29, 2012 until the date the Class Notice is first disseminated in this action. Excluded from the Settlement Class are: (1) all judges and magistrates who have presided or are presiding over this action (or the judge or Magistrate presiding over the action through which this matter is presented for settlement); (2) the defendants, defendants' subsidiaries, parent companies, successors, predecessors, and any entity in which the defendants or their parents have a controlling interest and their current or former officers, directors, and employees; (3) retailers of the Adore Products; (4) persons who properly execute and file a timely Request for Exclusion from the class; and (5) legal representatives, successors or assigns of any such excluded person.

Agreement, at ¶ 2.1(GG).

The Adore Products include Defendants' Adore Organic Innovations product line that are marketed as containing a plant stem cell formula, purchased by Class Members during the Class Period for her or his own personal or household use and not for resale, and include: (i) CELLMAX Redefining Facial Cream; (ii) CELLMAX Elite Facial Serum; (iii) CELLMAX Superior Supplement Facial Thermal Mask; (iv) Essence Facial Detoxifying Cleansing Cream; (v) Essence Facial Toner; (vi) Essence Facial Milk; (vii) Essence Facial Cleanser; (viii) Snow White Facial Brightening Cream; (ix) Dreams Multi Active Night Cream; (x) Performer Sculpting Neck Serum; (xi) Essence Facial Serum; (xii) Essence Facial Hydrating Cream - normal to oily skin;  (xiii) Essence Facial Hydrating Cream - normal to dry skin; (xiv) Advanced Firming Eye Cream; (xv) Advanced Firming Eye Serum; (xvi) Skin Tightening Instant Face Lift; (xvii) Golden Touch Magnetic Facial Mask; (xviii) Essence Facial Collagen Mask; (xix) Golden Touch 24k Techno- Dermis Facial Mask; (xx) Nourishing Hand and Body Lotion – Original; (xxi) Nourishing Hand and Body Lotion – Blossom; (xxii) Nature - Intensive Body Butter;

(xxiii) Spirit – Calming Body Butter; (xiv) Spirit - Calming Body Peeling Scrub; and, (xv) Nature - Intensive Body Peeling Scrub. Agreement.  Agreement, at ¶ 2.1(AA).

## B.  Settlement Consideration

### 1.  *Monetary Relief*

For Settlement Class Members who submit a receipt that shows a purchase of Adore Products with their Claim, Defendants will provide either: (i.) $25.00 cash per such Settlement Class Member; or (ii.) an electronic gift card for 50% of the price paid for the Adore Products reflected on the receipt, with a maximum gift card value of $200 per any such Settlement Class Member, for use on the website, https://www.adorecosmetics.com/, and having a one-year expiration date.  The aforementioned option (i) shall have a total cap of $50,000.00 in cash available for the entire class.  Accordingly, when a total of $50,000 in cash has been claimed by Authorized Claimants, that cash option shall not be available and the remaining Authorized Claimants who submitted the required receipt shall receive a Settlement Payment pursuant to option (ii).  With respect to option (ii), the combined total value of all gift cards issued to Authorized Claimants who submitted a receipt shall not exceed $225,000 in gift cards. Agreement, at ¶ 6.2(1)(a).

For Settlement Class Members who submit a claim without a receipt showing a purchase of an Adore Product, Defendants will provide one $50 electronic gift card per such class member for use on the website, https://www.adorecosmetics.com/, with a one-year expiration date. The combined total value of all gift cards issued to Authorized Claimants who filed a Claim without a receipt shall not exceed $100,000 in gift cards. (Agreement, at ¶ 6.2(1)(b)). If the maximum Settlement Fund is exhausted, the Settlement Payments will be reduced *pro rata*. Agreement, at ¶ 6.2(1)(c).

### 2.  *Non-Monetary Relief*

Defendants agree that within eight months of the Court's final approval of the Settlement Agreement, UHI's advertising and promotion of the Adore Products will comply with the following prospective injunctive relief:

(i)     Defendants will remove the word "proven" from the labelling of the Adore Products and the description or promotion of the Adore Products upon the https://www.adorecosmetics.com/ website;

(ii)  Defendants will remove the word "breakthrough" from the labelling of the Adore Products and the description or promotion of the Adore Products upon the https://www.adorecosmetics.com/ website;

(iii)  Defendants will remove the phrase: "most advanced anti-aging science available today" from the labelling of the Adore Products and the description or promotion of the Adore Products upon the https://www.adorecosmetics.com/ website;

(iv)  Defendants shall not state that the plant stem cell formula contains "live" plant stem cells.

Agreement, at ¶ 6.2(2).

### C. The Notice Program and Settlement Administration

Pending this Court's approval, Classaura, LLC will serve as the Notice and Settlement Administrator, and will be responsible for administrating the Notice Program and for paying valid claims to Settlement Class Members. The Notice Program consists of four different components: (1) Direct Email Notice, (2) Online Notice, (3) Print Publication Notice in *USA Today* and the *Los Angeles Times* and (4) Long-Form and Short-Form Notices. Agreement. Agreement, at ¶ 5.1-5.5; Declaration of Gajan Retnasaba in Support of Joint Motion for Preliminary Approval ("Retnasaba Decl."), ¶¶ 1-16. The forms of the proposed Long Form-Notice, Short-Form Notice, and Email Notice, agreed upon by Class Counsel and Defendants, subject to this Court's approval and/or modification, are attached to the Settlement Agreement as Exhibits B-D. The Notice Administrator has 5,382 email addresses of Settlement Class Members who purchased Adore Products during the Class Period from Defendants' online store. Marron Decl., at ¶ 5; Retnasaba Decl., at ¶ 7. These Class Members will receive direct email notice of the settlement. Retnasaba Decl. ¶¶ 6-10. The Notice Administrator will also establish a settlement website that will be located at www.plantstemcellsettlement.com. Retnasaba Decl. ¶¶ 14-16.

The Notice program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement, Class Counsel's fee application and/or the request for a Service Award; the date of the Final Approval Hearing; information regarding the Settlement

Website where Settlement Class members may access the Agreement, and other important documents. Agreement, at ¶¶ 5.1-5.5.

### D. Claims Process

The Claims process here is intentionally straightforward, easy to understand for Settlement Class members, and designed so that they can make a claim to their portion of the Settlement Fund without complication. Marron Decl., at ¶ 6. Settlement Class members will make a claim by submitting a valid and timely Claim Form to the Settlement Administrator. A copy of the Claim Form is attached to the Settlement Agreement as Exhibit A. Claim Forms may be sent in by hard copy or submitted electronically on the Settlement Website. The Claim Form requires basic information from Settlement Class members, including: (1) name; (2) current address; (3) identification of the Adore Products purchased; (4) location of where the Adore Products were purchased from; and (5) a current contact telephone number. Once a Settlement Class member submits a Claim Form and it is reviewed and approved by the Settlement Administrator, the Settlement Class Member will automatically receive either a cash payment or gift card as discussed above.

### E. Opt-Out and Objection Procedures

Settlement Class members who do not wish to participate in the Settlement may opt-out of the Settlement by sending a written request to the Settlement Administrator at the address designated in the Notice. Settlement Class members who timely opt-out of the Settlement will preserve their rights to individually pursue any claims they may have against Defendants, subject to any defenses that Defendants may have against those claims. The Settlement Agreement details the requirements to properly opt-out of the Settlement Class. Agreement, at ¶ 4.2. A Settlement Class member must opt-out of the Settlement Class by the Objection/Exclusion Deadline, which is 90 calendar days after the date of the Order Granting Preliminary Approval. Agreement, at ¶ 2.1(V).

Settlement Class Members who wish to file an objection to the Settlement likewise must do so no later than 90 days after the date of the Order Granting Preliminary Approval. Agreement, also ¶ 2.1(V). For an objection to be considered by the Court, it must include the following:

> (i)     a reference, in its first sentence, to this Litigation, *Lisa Mollicone et al. v. Universal Handicraft, Inc., et al.*, Case No. 1:17-cv-21468-RNS;

(ii)     The Objector's full, legal name, residential address, telephone number and email address (and the Objector's lawyer's name, business address, telephone number and email address if objecting through counsel);

(iii)    a statement describing the Objector's membership in the Settlement Class, including a verification under oath as to the date, name of the Class Products purchased, and the location and name of the retailer from whom the Objector made the purchase of Adore Products and/or a Receipt reflecting such purchase and any other information required by the Claim Form;

(iv)    a written statement of all grounds for the objection, accompanied by any legal support for such objection;

(v)     copies of any papers, briefs, or other documents upon which the objection is based;

(vi)    a list of all persons who will be called to testify in support of the objection;

(vii)   a statement of whether the Objector intends to appear at the Settlement Hearing (Note, if the objector intends to appear at the Settlement Hearing through counsel, the objection must also state the identity of all attorneys representing the objector who will appear at the Settlement Hearing);

(viii)  a list of the exhibits that the Objector may offer during the Settlement Hearing, along with copies of such exhibits; and

(ix)    the Objector's signature.

In addition, the Objector must include the following with his or her objection: (i) the identity of all counsel who represent the Objector, if any, including former or current counsel who may be entitled to compensation for any reason related to the objection; (ii) a detailed list of any other objections submitted by the Objector, or Objector's counsel on his or her behalf, to any class actions submitted in any court, whether state or federal, in the United States within the previous five (5) years. Agreement, at ¶ 4.3

**F.  Release of Claims**

In exchange for the Settlement consideration, Plaintiffs and each Settlement Class Member, and each of their heirs, guardians, executors, parents, administrators, representatives, agents, attorneys, insurers, partners, successors, predecessors-in-interest, and assigns, shall be deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Persons.

Agreement, at ¶ 7.1. The Released Claims are defined in paragraph 2.1(CC) of the Agreement and the Released Persons are defined in paragraph 2.1(EE) of the Agreement.

### G. Class Counsel's Fees and Expenses and Plaintiffs' Service Awards

Defendants have agreed not to oppose Class Counsel's request for an award of attorneys' fees and reasonable, actual out-of-pocket expenses of up to $300,000, subject to this Court's approval.   Agreement ¶ 8.1. Defendants have also agreed not to oppose an application for a Service Award for Plaintiff Mollicone up to $5,000.00 and an application for a Service Award for Plaintiff Land up to $3,000.00. Agreement, at ¶ 8.3. Subject to this Court's approval, Class Counsel will file a Motion for Attorneys' Fees, Expenses, and Service Awards at least 30 days prior to the Final Approval Hearing date. Agreement, at ¶ 8.1

## IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A. The Legal Standard for Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e). As a matter of public policy, courts favor settlements of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *See Montoya v. PNC Bank, N.A.*, No. 14-20474, 2016 WL 1529902, *7 (S.D.Fla. Apr. 13, 2016). The policy favoring early resolution through settlement is particularly important in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Approval of a class action settlement is a two-step process. *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. 2007). Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* (citations omitted). In the second step, after notice to settlement class members and time and opportunity for them to object or otherwise be heard, the court considers

whether to grant final approval of the settlement as fair and reasonable under Rule 23. *Id.* Notably, "[i]n considering the settlement, the district court may rely upon the judgment of experienced counsel for the parties." *Montoya*, 2016 WL 1529902, *8 (quoting *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed.Appx. 429, 434 (11th Cir. 2012)). Therefore, "[a]bsent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel." *Id.*

Accordingly, the standard for granting preliminary approval is low—a proposed settlement will be preliminarily approved if it falls "within the range of possible approval" or, otherwise stated, if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting *Manual For Complex Litigation* § 1.46 at 62, 64-65 (1982)); *see also Newberg On Class Actions* § 13:13 (5th ed. 2016) ("Bearing in mind that the primary goal at the preliminary review stage is to ascertain whether notice of the proposed settlement should be sent to the class, courts sometimes define the preliminary approval standard as determining whether there is 'probable cause' to submit the [settlement] to class members and [to] hold a full-scale hearing as to its fairness."). Thus, "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are not obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011).

Class Counsel and Defendants respectfully request that the Court take this important first step in the process and grant Preliminary Approval of the Settlement. The Settlement is clearly within the range of reasonableness, and satisfies all standards for Preliminary Approval.

### B.  The Settlement Satisfies the Criteria for Preliminary Approval

Each of the relevant factors weighs heavily in favor of Preliminary Approval of this Settlement. First, the Settlement was reached in the absence of collusion, and is the product of good-faith, informed and arm's length negotiations by competent counsel. Furthermore, a preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that it fits well within the range of reasonableness, such that Preliminary Approval is appropriate.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Although, on the one hand,

Plaintiffs and Class Counsel believe that the claims asserted are meritorious and that Plaintiffs would prevail if this matter proceeded to trial; on the other hand, Defendants argue that Plaintiffs' claims are unfounded, deny any wrongdoing and liability, have asserted many defenses that they believe are meritorious, and have shown a willingness to litigate vigorously and strenuously believe that they will prevail if this action proceeds to summary judgment or trial.

In view of the Parties' respective positions and the vigor with each side had pursued such positions, the Parties have  concluded that the benefits of the Settlement outweigh the significant risks and uncertainties attendant to continued litigation which include, but are not limited to, the risks, time and expenses associated with completing trial and any appellate review.

## C.  The Settlement Agreement is the Product of Good Faith, Informed and Arm's Length Negotiations

A class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Lipuma v. American Express Co*., 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. Marron Decl., at ¶ 10. In reaching this result, the Parties engaged in formal mediation before an experienced and respected mediator. The mediation and the negotiations in between were arm's-length and extensive.  Marron Decl., at ¶¶ 4, 7; *see Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

Furthermore, Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. Marron Decl. ¶¶ 11; 22-40 and Exhibit 2. Class Counsel zealously represented their clients throughout the litigation, and throughout the discovery process, which included review of myriad documents and electronic data as well as preparing for and taking depositions. Marron Decl. ¶ 12.

In negotiating this Settlement, Class Counsel had the benefit of years of experience in litigating and settling complex class actions and a familiarity with the facts of the Action. Marron Decl. ¶ 13; 22-40 and Exhibit 2. As detailed above, Class Counsel conducted a thorough analysis of the claims and defenses, and engaged in extensive discovery with Defendants and with third parties. *Id*. ¶ 14. Class Counsel's review of that discovery enabled them to gain an understanding of the evidence related to central questions in the Action, and prepared them for well-informed settlement negotiations. *See Francisco v. Numismatic Guaranty Corp. of America*, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted extensive discovery).

**D. The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate and Reasonable**

The Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy and reasonableness of the Settlement is warranted.

***1. Likelihood of Success at Trial***

Class Counsel are confident in the strength of Plaintiffs' case, but are also pragmatic in their awareness of the thirty-eight defenses set forth by Defendants, and the risks inherent in trial and post-judgment appeal. Marron Decl. ¶ 16. It is clear that each of Plaintiffs' seven complex claims would be vigorously challenged by both Defendants at summary judgment, trial and during an inevitable post-judgment appeal. Further, it still remains unclear whether Plaintiffs would be able to certify a class for resolution of the asserted claims at trial. Under the circumstances, Class Counsel appropriately determined that the Settlement provides a benefit to the class that outweighs the risks and uncertainty of continued litigation. Marron Decl. ¶ 17.

Even if Plaintiff and the Settlement Class prevailed at trial, any recovery could be delayed for years by an appeal. *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). This Settlement provides substantial relief to Settlement Class Members without further delay.

***2. Range of Possible Recovery and the Point on or Below that Range at Which a Settlement is Fair***

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for

the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

Courts have determined that settlements may be reasonable even where plaintiffs recover only part of the actual losses they alleged. *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"). "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

The cash recovery in this case is more than reasonable, given the complexity of the litigation, the several, thoroughly pleaded defenses, and the significant risks and barriers that loomed in the absence of settlement including, but not limited to, an anticipated motion for class certification, a motion for summary judgment, *Daubert* motions, trial as well as appellate review following a final judgment. Marron Decl. ¶ 18. The agreed injunctive relief and Defendants' obligation to pay up to $200,000.00 in Settlement Administration and Notice Administration costs is a further benefit to the Settlement Class.

There can be no doubt that this Settlement is a fair, adequate and reasonable recovery for the Settlement Class in light of Defendants' defenses, the uncertainty of class certification, and the challenging, time-consuming, expensive and unpredictable path of litigation that Plaintiffs and all Settlement Class members would face absent the Settlement. Marron Decl. ¶ 19.

### 3. *Complexity, Expense, and Duration of Litigation*

The traditional means for handling complex claims such as those at issue here would tax the court system, require a massive expenditure of both public and private resources and, given the relatively small value of the claims of individual class members, would be impracticable. Therfore, in Class Counsel's informed judgement, the Settlement is the best and most expedient vehicle through which Settlement Class Members may receive certain relief in a prompt and efficient manner. Marron Decl. ¶ 20.

### 4. *Stage of Proceedings*

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324.

Here, the Settlement was reached only after extensive discovery, including the production and review of more than a thousand of pages of documents and electronic data produced by Defendants, several lengthy depositions of parties, as well as third-party depositions and document productions. As a result, Class Counsel were extremely well-positioned to confidently evaluate the strengths and weaknesses of Plaintiffs' claims and prospects for success at trial and on appeal. Marron Decl. ¶ 21.

### E. Certification of the Settlement Class is Appropriate

For settlement purposes, Plaintiffs and Class Counsel respectfully request that the Court certify the Settlement Class defined in paragraph 2.1(GG) of the Agreement. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### 1. Numerosity Under Rule 23(a)

Pursuant to Rule 23, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The focus of the numerosity inquiry is not whether the number of proposed class members is too few to satisfy the rule, but whether joinder of proposed class members is impractical." *Sharf v. Financial Asset Resolution, LLC*, 295 F.R.D. 664, 669 (S.D. Fla. 2014) (internal citations and quotations omitted). Importantly, numerosity is about "common sense." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982). Because the Class consists of all persons in the United States who purchased Adore Products marketed as containing a plant stem cell formula anytime from September 29, 2012 until the date the Class Notice is first disseminated in this action, it is common sense that joinder would be impracticable.

### 2. Commonality Under Rule 23(a)

Additionally, the Rule requires that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality "requires only that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Sharf*, 295 F.R.D. at 669. Defendants' marketing of Adore Products as containing a plant stem cell formula is a common thread for all members of the Class which is susceptible of "class-wide proof." *See Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *4.

14

### 3. *Typicality Under Rule 23(a)*

Here, "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Plaintiffs, like members of the Class, have all purchased the Adore Products marketed as containing a plant stem cell formula. Plaintiffs' claims "arise from the same event or pattern or practice and are based on the same legal theory as the claims of the class." *Wm. Wrigley Jr. Co*., 2010 WL 2401149, at *4 (internal quotation and citation omitted).

### 4. *Adequacy Under Rule 23(a)*

Here, the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are "no substantial conflicts of interest [] between the representatives and the class." *Wm. Wrigley Jr. Co*., 2010 WL 2401149, at *5 (internal quotation and citation omitted).  Moreover, Plaintiffs and their counsel "will adequately prosecute the action," *id*., as evidenced by defeating Defendants' motions to dismiss for example. Furthermore, undersigned counsel has prior experience as class counsel in many class action cases.  *See* Marron Decl., at ¶¶ 22-40 & Ex. 2; Declaration of Cullin O'Brien in Support of Joint Motion for Preliminary Approval of Class Action Settlement ("O'Brien Decl."), ¶¶ 1-9.

### 5. *Predominance and Superiority Under Rule 23(b)*

There must be "questions of law or fact common to the members of the class [that] predominate over any questions affecting only individual members, and [] a class action [must be] superior to other available methods for the fair and efficient adjudication of the controversy." *Wm. Wrigley Jr. Co*., 2010 WL 2401149, at *5.  That is so here.

Here, the entire case arises out of "the same legal theories and the same uniform" conduct by Defendants, *see Wm. Wrigley Jr. Co*., 2010 WL 2401149, at *5, – Defendants' sales of the Adore Products marketed as containing a plant stem cell formula.  Moreover, this case concerns a "common set of facts and concern the same" conduct by Defendants. *Id*.

Thus, Rule 23(b) is satisfied for preliminary approval purposes.

### F.  The Court Should Approve the Proposed Notice

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Litigation* § 21.312 (internal quotation marks omitted). The best practicable notice is

that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also Manual for Complex Litigation* § 21.312 (listing relevant information).

The Notice program satisfies all of these criteria. As recited in the Settlement and above, the Notice Program will inform Settlement Class members of the substantive terms of the Settlement. It will advise Settlement Class members of their options for remaining part of the Settlement Class, for objecting to the Settlement, Class Counsel's Attorneys' fee application and/or request for Service Award, or for opting-out of the Settlement, and how to obtain additional information about the Settlement. The Notice Program is designed to reach a high percentage of Settlement Class members, and exceeds the requirements of Constitutional Due Process. Therefore, the Court should approve the Notice Program and the form and content of the Notices.

### G.  Proposed Schedule of Events

In connection with Preliminary Approval of the Settlement, the Court should also set a date and time for the Final Approval Hearing. Other deadlines in the Settlement approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the Settlement, will be determined based on the date of the Final Approval Hearing or the date on which the Preliminary Approval Order is entered. The Parties respectfully propose the following schedule:

| EVENT | DEADLINE |
|-------|----------|
| Deadline for publishing Notice | 10 days after the Court's Order Granting Preliminary Approval. |

| Filing of papers in support of Final Approval and Class Counsel's Application for Attorneys' Fees and Expenses | 90 days after the Court's Order Granting Preliminary Approval. |
|---|---|
| For filing an objection with the Court, or submitting a Request for Exclusion to the Settlement Administrator | 90 days after the Court's Order Granting Preliminary Approval. |
| Filing of response to objections | 10 days before the date of the Final Approval Hearing. |
| Final Approval Hearing | 120 days after date of Order Granting Preliminary Approval. |
| Deadline for submitting claims forms | 10 days after the date of the Final Approval Hearing |

## V.    __CONCLUSION__

Based on the foregoing, the Parties respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) approve the Notice program set forth in the Agreement and approve the form and content of the Notices and Claim Form, attached to the Settlement Agreement as Exhibits A-D; (4) approve and order the opt-out and objection procedures set forth in the Agreement; (5) appoint Plaintiffs, Lisa Mollicone and Millie Land, as Class Representatives; (6) appoint as Class Counsel the law firms and attorneys listed in paragraph 2.1.H. of the Agreement; and (7) schedule a Final Approval Hearing at least 120 days after the date of the Court's Order Granting Preliminary Approval of the Agreement.

Dated: March 30, 2018                           Respectfully submitted,

                                                _/s/ Cullin O'Brien_

                                                **CULLIN O'BRIEN LAW, P.A.**
                                                Cullin O'Brien / Florida Bar 0597341
                                                _cullin@cullinobrienlaw.com_
                                                6541 NE 21 St Way,

Fort Lauderdale, FL 33308
(561) 676-6370
(561) 320-0285

**LAW OFFICES OF RONALD A. MARRON**
Ronald A. Marron
*ron@consumersadvocates.com*
Michael T. Houchin
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
Fax: (619) 564-6665
*Counsel for Plaintiffs and the Proposed Classes*

Dated: March 30, 2018

*/s/ Susan J. Latham*

**COZEN O'CONNOR**
Jeffrey D. Feldman / Fla. Bar No. 330302
Email: JFeldman@cozen.com
Susan J. Latham / Fla. Bar No. 687391
Email: SLatham@cozen.com
Southeast Financial Center, 30th Floor
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305-704-5940
Facsimile: 305-704-5955
*Attorneys for Universal Handicraft, Inc., and Shay Sabag Segev*

## CERTIFICATE OF SERVICE

I HEREBY certify that on March 30, 2018, I electronically filed the foregoing document with the Clerk of the Court CM/ECF.


/s/*Cullin O'Brien*
CULLIN O'BRIEN