**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 17-21468-CIV-RNS

| | |
|---|---|
| LISA MOLLICONE and MILLIE LAND, on behalf of themselves, all others similarly situated, and the general public, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | )<br>)<br>) |
| UNIVERSAL HANDICRAFT, INC., D/B/A "Deep Sea Cosmetics" d/b/a "Adore Organic Innovations;" and SHAY SABAG SEGEV, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>/ |

**PLAINTIFFS' UNOPPOSED MOTION ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS**

Plaintiffs Lisa Mollicone and Millie Land ("Plaintiffs") respectfully submit this unopposed motion for attorneys' fees, costs, and incentive awards pursuant to the Court's April 3, 2018 Preliminary Approval Order (DE No. 120) and hereby state as follows:

1

## **TABLE OF CONTENTS**

MEMORANDUM OF LAW .................................................................................................. 1
I.    INTRODUCTION ................................................................................................... 1
II.    THE SETTLEMENT PROVIDES FOR BOTH A COMMON FUND AND INJUNCTIVE RELIEF ............................................................................................ 2
III.    CLASS COUNSEL ARE ENTITLED TO ATTORNEYS' FEES AND COSTS UNDER THE COMMON FUND DOCTRINE ..................................................................... 3
IV.    CLASS COUNSEL ARE ALSO ENTITLED TO ATTORNEYS' FEES AND COSTS UNDER APPLICABLE CALIFORNIA LAW ......................................................... 4
V.    THE SETTLEMENT PROVIDES FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS ......................................................................................... 5
VI.    CLASS COUNSEL'S REQUESTED FEES ARE FAIR AND REASONABLE .............. 6
    A.    THE CLAIMS AGAINST DEFENDANTS REQUIRED SUBSTANTIAL TIME AND LABOR .............. 7
    B.    THE ISSUES INVOLVED WERE NOVEL AND DIFFICULT, AND REQUIRED THE SKILL OF HIGHLY TALENTED ATTORNEYS ................................................................. 8
    C.    CLASS COUNSEL ACHIEVED A SUCCESSFUL RESULT ............................................ 9
    D.    THE CLAIMS PRESENTED SERIOUS RISK ....................................................... 10
    E.    CLASS COUNSEL ASSUMED CONSIDERABLE RISK TO PURSUE THIS ACTION ON A PURE CONTINGENCY BASIS ............................................................................ 11
    F.    THE REQUESTED FEE COMPORTS WITH FEES AWARDED IN SIMILAR CASES ...................... 11
    G.    THE FEE REQUEST IS REASONABLE USING A LODESTAR CROSS CHECK ........................... 12
    H.    CLASS COUNSEL'S HOURLY RATES ARE REASONABLE AND HAVE BEEN APPROVED BY NUMEROUS FEDERAL AND STATE COURTS ................................................... 13
VII.    THE REQUESTED COSTS ARE FAIR AND REASONABLE .................................. 15
VIII.    THE REQUESTED INCENTIVE AWARDS ARE FAIR AND REASONABLE .......... 15
IX.    CONCLUSION ................................................................................................... 16

**MEMORANDUM OF LAW**

**I.   INTRODUCTION**

This Unopposed Motion for Attorneys' Fees, Costs, and Incentive Awards ("Fee Motion") comes before the Court pursuant to the Settlement and the Court's April 3, 2018 Preliminary Approval Order (DE No. 120), which set a Final Approval Hearing for August 10, 2018 at 8:30 a.m. in the above-entitled Court, including consideration of any application for attorneys' fees, costs, and incentive awards.

Plaintiffs/Class Representatives Lisa Mollicone and Millie Land ("Plaintiffs"), by and through their undersigned counsel of record ("Class Counsel"), hereby respectfully move this Court for entry of an Order granting an award of attorneys' fees to Class Counsel in the amount of $281,233.28.[1] That amount is 31.9% of the $883,000 Settlement Fund and is consistent with the percentage fee often awarded in 'percentage of the fund' cases, with many fee awards exceeding 30%, in addition to costs being awarded.

In addition, Class Counsel are requesting that the Court also award their costs reasonably incurred in the prosecution of this litigation in the amount of $18,776.72. Thus, in sum, Class Counsel is seeking a total fee and expense award of $300,000.

Furthermore, Plaintiffs are seeking incentive awards for their efforts in representing the Settlement Class in this action. Specifically, Plaintiff Lisa Mollicone seeks an incentive award in the amount of $5,000 and Plaintiff Millie Land seeks an incentive award in the amount of $3,000.

---

[1] Class Counsel has expended 642.5 hours in this litigation. *See* Declaration of Ronald A. Marron in Support of Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs, and Incentive Awards filed concurrently herewith ("Marron Decl."), ¶¶ 19, 21; Declaration of Cullin A. O'Brien in Support of Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs, and Incentive Awards filed concurrently herewith ("O'Brien Decl."), ¶ 14. With a total lodestar of $364,192.50 between the two firms (Marron Decl., ¶ 21; O'Brien Decl., ¶ 14), the requested fee of $281,223.28 results in a negative multiplier (i.e. a reduction of $82,969.22 from Class Counsel's lodestar). Said differently, Class Counsel are seeking 77.218% of their total lodestar ($364,192.50 x .77218 = $281,223.28). Thus, the hours claimed by Class Counsel are "reasonable" as they stand. *See Perkins v. Mobile Housing Board*, 847 F.2d 735, 738 (11th Cir. 1988) (attorney hours sworn to are "evidence of considerable weight on the issue of the time required in the usual case" and should not be reduced unless "the time claimed is obviously and convincingly excessive under the circumstances").

1

In light of the excellent results achieved in this litigation, including both monetary and injunctive relief, Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards should be granted.

## II.     THE SETTLEMENT PROVIDES FOR BOTH A COMMON FUND AND INJUNCTIVE RELIEF

In addition to valuable injunctive relief, the Settlement Fund in this action provides a total of $883,000 in monetary relief, which is comprised of the following components: (1) $50,000 to Settlement Claimants with a proof of purchase who chose to receive a $25.00 cash payment (*See* Class Action Settlement Agreement ("Agreement"), DE No. 119-1 at ¶ 6.2(1)(a)(i));[2] (2) $225,000 in electronic gift cards for use on the website, www.adorecosmetics.com, to Settlement Claimants with a proof of purchase who chose to receive a gift card for 50% of the purchase price paid for their Adore Products as reflected on the proof of purchase (Agreement at ¶ 6.2(1)(a)(ii));[3] (3) $100,000 in electronic gift cards for use on the website, www.adorecosmetics.com, to Settlement Claimants without a proof of purchase with a maximum gift card value of $50.00 per such Claimant (Agreement ¶ 6.2(1)(b)); (4) $200,000 for notice and administration expenses (Agreement at ¶ 5.3); (5) $300,000 for Class Counsel's attorneys' fees and expenses, subject to this Court's approval (Agreement at ¶ 8.1); (6) $5,000 as an incentive award to Plaintiff Mollicone for her efforts in this action, subject to this Court's approval (Agreement at ¶ 8.3), and (7) $3,000 as an incentive award to Plaintiff Millie Land for her efforts in this action, subject to this Court's approval (Agreement at ¶ 8.3). The value of the electronic gifts cards and the costs of notice and administration are properly included when calculating the value of the total Settlement Fund. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 951-53 (9th Cir. 2015) (including the value of gift cards as well as settlement notice and administration expenses into the total amount of the settlement fund); *Champs Sports Bar & Grill Co. v. Mercury Payment Sys., LLC*, 275 F. Supp. 3d 1350, 1353 (N.D. Ga. 2017) (including the value of "costs of notice and administration, attorneys' fees and expenses, and service awards" when calculating the total value of the settlement fund).

---

[2] A copy of the Parties' Agreement is also attached as Exhibit 1 to the concurrently filed Declaration of Ronald A. Marron in Support of the Parties' Joint Motion for Final Approval ("Marron Decl. ISO Final Approval").

[3] For Settlement Class Members who chose this option, there is a maximum gift card value of $200 per any such Settlement Class Member.

As mentioned above, in addition to the monetary relief provided to the Settlement Class Members, the Settlement also provides valuable non-monetary injunctive relief. Specifically, Defendants have agreed that, within eight months of the Court's final approval of the Settlement Agreement, they would comply with the following prospective injunctive relief: (1) Defendants will remove the word "proven" from the labelling of the Adore Products and the description or promotion of the Adore Products upon the www.adorecosmetics.com/ website; (2) Defendants will remove the word "breakthrough" from the labelling of the Adore Products and the description or promotion of the Adore Products upon the www.adorecosmetics.com/website; (3) Defendants will remove the phrase: "most advanced anti-aging science available today" from the labelling of the Adore Products and the description or promotion of the Adore Products upon the www.adorecosmetics.com/ website, and; (4) Defendants shall not state that the plant stem cell formula contains "live" plant stem cells. Agreement at ¶ 6.2(2)(a).

This injunctive relief provides a valuable benefit to the class, and future consumers, and should be considered when attorneys' fees and expenses. *See, e.g., Marty v. Anheuser-Busch Companies, LLC*, No. 13-cv-23656-JJO, 2015 WL 6391185, at *2 (S.D. Fla. Oct. 22, 2015) ("Under Eleventh Circuit law, injunctive changes such as label modifications represent a benefit to the class and should be considered when approving a class settlement."); *Wilson v. EverBank*, No. 14-CIV-22264-2016 WL 457011, at *11 (S.D. Fla. Feb. 3, 2016) ("courts rightly consider the value of injunctive and monetary relief together in assessing whether a class action settlement provides sufficient relief to the class."); *Hamilton v. SunTrust Mortg. Inc.*, No. 13–60749–CIV, 2014 WL 5419507, at *12 (S.D. Fla. Oct. 24, 2014) ("The Court finds the injunctive changes provided in the Settlement Agreement are important and have significant value to the class members nationwide.").

## III.     CLASS COUNSEL ARE ENTITLED TO ATTORNEYS' FEES AND COSTS UNDER THE COMMON FUND DOCTRINE

Although the "American Rule" generally prohibits a prevailing litigant in federal litigation from recovering attorneys' fees in the absence of statutory authority, "[t]he common fund exception 'rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense.'" *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Therefore, "[a]ttorneys in a class action in which a common

fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval." *Id.* (citing Fed. R. Civ. P. 23(e)). Here, the Settlement creates a common fund in the amount of $883,000. As discussed in more detail below, Class Counsel's request for fees in the amount of 31.9% of the total fund is reasonable and should be approved.

## IV. CLASS COUNSEL ARE ALSO ENTITLED TO ATTORNEYS' FEES AND COSTS UNDER APPLICABLE CALIFORNIA LAW

"An award of attorneys' fees incurred in a suit based on state substantive law is generally governed by state law." *See Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1024 (9th Cir. 2003). Here, Plaintiff Lisa Mollicone purchased the Adore Products in Los Angeles, California and sought relief under California's consumer protection laws. *See generally* Third Amended Complaint ("TAC"), DE No. 95. Thus, Plaintiff Mollicone invokes California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.* and California's Private Attorney General Statute, Cal. Civ. Proc. Code § 1021.5 as applicable fee-shifting statutes. Under the CLRA "the court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section." Cal. Civ. Code § 1780(e) (emphasis added).

> The legislative policy to allow prevailing plaintiffs reasonable attorneys' fees is clear. Section 1780 provides remedies for consumers who have been victims of unfair or deceptive business practices. The provision for recovery of attorney's fees allows consumers to pursue remedies in cases . . . where the compensatory damages are relatively modest.

*Hayward v. Ventura Volvo*, 108 Cal. App. 4th 509, 512 (2003). "[T]he availability of costs and fees to prevailing plaintiffs is integral to making the CLRA an effective piece of consumer legislation, increasing the financial feasibility of bringing suits under the statute." *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 644 (2009). Thus, this provision must "be liberally construed and applied to promote [the CLRA's] underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *See* Cal. Civ. Code § 1760; *accord Hayward*, 108 Cal. App. 4th at 512-13 ("section 1760 expressly directs [courts] to liberally construe section 1780 to protect consumers"). "Accordingly, an award of attorney fees to 'a prevailing plaintiff' in an action brought pursuant to the CLRA is mandatory, even where the litigation is resolved by

4

a pre-trial settlement agreement, absent an enforceable agreement to the contrary." K*im v. Euromotors W./The Auto Gallery*, 149 Cal. App. 4th 170, 178-79, 181 (2007).[4]

Here, Plaintiffs are the prevailing and successful party because their lawsuit, initiated close to three years ago, achieved its main objective of remedying what the Plaintiffs have alleged is false and deceptive advertising of Defendants' line of Adore Cosmetics marketed as containing a plant stem cell formula. As discussed in further detail below, the agreed-upon Settlement, if approved in finality, will result in both monetary and injunctive relief. Injunctive relief, such as this, that is "'socially beneficial' . . . justif[ies] a fee award under" the CLRA. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011). By achieving their main objectives sought in bringing suit, Plaintiffs are successful and prevailing parties.

## V. THE SETTLEMENT PROVIDES FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

"A request for attorney's fees should not result in a second major litigation. Ideally . . . litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). That is what has been done here—in addition to resolving the claims for damages and other relief, the Parties also entered into a settlement regarding Plaintiffs' claims for attorneys' fees, costs, and incentive awards. Agreement at ¶¶ 8.1 & 8.3.

Courts across the nation routinely acknowledge that parties may settle claims for attorneys' fees in a class action by entering into an agreement—like the present case—that the defendants will pay a plaintiff's attorneys' fees. *See Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 CIV. 2207 JGK, 2010 WL 3119374, at *5 (S.D.N.Y. Aug. 6, 2010) ("An agreed upon award of attorneys' fees and expenses is proper in a class action settlement, so long as the amount of the fee is reasonable under the circumstances."); *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 553 (2009) (a fee agreement "'serves to facilitate settlements and avoids a conflict, and yet it gives the defendant a predictable measure of exposure and total monetary liability for the

---

[4] Additionally, California Civil Procedure Code "section 1021.5 authorizes an award of attorney fees to a 'private attorney general,' that is, a party who secures a significant benefit for many people by enforcing an important right affecting the public interest." *Serrano v. Stefan Merli Plastering Co.*, 52 Cal. 4th 1018, 1020 (2011). Fees are awarded when: (1) the action "has resulted in the enforcement of an important right affecting the public interest," (2) "a significant benefit, whether pecuniary or nonpecuiary, has been conferred on the general public or a large class of persons", and (3) "the necessity and financial burden of private enforcement . . . are such as to make the award appropriate." *Id.* (citations omitted).

judgment and fees in a case. To the extent it facilitates completion of settlements, this practice should not be discouraged."); 4 NEWBERG ON CLASS ACTIONS (4th ed.) § 12:3 ("Defendants in a class action settlement may properly agree to pay the plaintiffs' attorneys' fees and expenses").

Where, as here, the Parties have negotiated an arms' length settlement, "[a] court should refrain from substituting its own value for a properly bargained-for agreement." *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (courts "should give substantial weight to a negotiated fee amount, assuming that it represents the parties' best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees." (citation omitted)). In addition to the Parties' agreement with respect to fees, the Law Offices of Ronald A. Marron and the law firm of Cullin O'Brien Law, PA have agreed to split any fees awarded in this action as follows: 90% to the Marron Firm and 10% to the O'Brien Firm. *See* Marron Decl., ¶ 23.

## VI. CLASS COUNSEL'S REQUESTED FEES ARE FAIR AND REASONABLE

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained through a settlement. In *Camden I* – the controlling authority regarding attorneys' fees in common- fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774.

The Court has discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) ("*Sunbeam*") (quoting *Camden I*, 946 F.2d at 774). The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as an attorney's fee to class counsel in class actions:

(1) the time and labor required;
(2) the novelty and difficulty of the relevant questions;
(3) the skill required to properly carry out the legal services;
(4) the preclusion of other employment by the attorney as a

6

result of his acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the clients or the circumstances;

(8) the results obtained, including the amount recovered for the clients;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and the length of the professional relationship with the clients; and

(12) fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

These 12 factors are guidelines and are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). The Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775. As applied, the *Camden I* factors support the requested fee.

**A. The Claims Against Defendants Required Substantial Time and Labor**

Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable. The organization of Class Counsel ensured that the work was coordinated to maximize efficiency and minimize duplication of effort. Marron Decl. ¶ 5. Class Counsel devoted substantial time to investigating the claims against Defendants. Marron Decl. ¶ 6. Class Counsel also expended resources researching and developing the legal claims at issue. *Id.* Substantial time and resources were also dedicated to conducting discovery. Marron Decl. ¶ 7. Class Counsel prepared and took the depositions of party and non-party witnesses, and devoted substantial time to reviewing documents and electronic data produced by Defendants. Marron Decl. ¶¶ 7-11. Class Counsel and Defendants also served multiple sets of written discovery and participated in several lengthy meet and confer conferences. Marron Decl. ¶ 8. There was also

7

considerable motion practice in this case. Class Counsel filed successful oppositions to Defendants' Motions to Dismiss the Second Amended Complaint and Defendants' Motions to Dismiss the Third Amended Complaint. Marron Decl. ¶ 12. Additionally, Class Counsel filed an opposition to Defendants' Motion to Transfer Venue. Marron Decl. ¶ 12.

Settlement negotiations consumed further time and resources. Marron Decl. ¶ 14. The Parties' mediation required substantial preparation and document review. Marron Decl. ¶ 14. Finally, a significant amount of time was devoted to negotiating and drafting of the Agreement and the preliminary approval process, and to all actions required thereafter pursuant to the preliminary approval order. Marron Decl. ¶ 14.

All told, Class Counsel's coordinated work paid dividends for the Settlement Class. Each of the above-described efforts was essential to achieving the Settlement before the Court. Marron Decl. ¶ 15.   The time and resources devoted to this Action readily justify the requested fee.

### B. The Issues Involved Were Novel and Difficult, and Required the Skill of Highly Talented Attorneys

"[P]rosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). This Court witnessed the quality of our legal work, which conferred a substantial benefit on the Settlement Class in the face of significant litigation obstacles. Class Counsel's work required the acquisition and analysis of a significant amount of factual and legal information.

In any given case, the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel. Litigation of this Action required counsel trained in class action law and procedure as well as the specialized issues presented here, such as analyzing regulations under the Food, Drug, and Cosmetics Act ("FDCA") and the interplay of varying state laws. Class Counsel possess these attributes, and their participation added value to the representation of this Settlement Class. Marron Decl., ¶¶ 3-4 & Ex. 1. The record demonstrates that the Action involved complex and novel challenges, which Class Counsel met at every juncture.

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3; *Ressler*, 149 F.R.D. at 654. Throughout the litigation, Defendants were represented by extremely capable counsel who litigated this case vigorously. They were worthy, highly competent adversaries. Marron Decl., ¶

16; *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (stating that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results").

### C. Class Counsel Achieved a Successful Result

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result. Rather than facing years of costly and uncertain litigation, the Settlement Class Claimants will receive both monetary and injunctive relief. Settlement claimants with a receipt can chose to receive either a $25.00 cash payment or an electronic gift card for use on the website, www.adorecosmetics.com, in the amount of 50% of the purchase price paid for the Adore Products as reflected on the proof of purchase. Agreement at ¶ 6.2(1)(a)(i). Settlement Class Members who submit a valid claim without a receipt will also receive an electronic gift card with a maximum value of $50. Agreement at ¶ 6.2(1)(a)(ii).[5] This monetary relief is significant considering that damages in this case would be limited to the "price premium" that Class Members paid as a result of Defendants' plant stem cell representations. Because it would be difficult to accurately calculate the value of the "price premium" attributable to Defendants' plant stem cell representations, there was serious risk that the Settlement Class Members would recover nothing at all. *See Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 698 (S.D. Fla. 2014) (denying class certification where the plaintiff failed to show a "price premium" that was attributable to the defendant's "all natural" labeling claims.). This Settlement alleviates the risk of no recovery and ensures that the Settlement Class Members will receive valuable monetary relief.

Moreover, the Settlement also provides valuable injunctive relief that achieves the goals of this lawsuit. Agreement at ¶ 6.2(1)(b). Among other things, Defendants will no longer be able to claim that the Adore Products are "proven" to provide anti-aging benefits nor will Defendants be able to claim that the Adore Products have the "most advanced anti-aging science available today." Agreement at ¶ 6.2(1)(b). While the value of injunctive relief may be difficult to monetize, the implementation of these advertising restrictions cannot be overlooked. *See Brazil*

---

[5] Pursuant to the terms of the Settlement Agreement, "If the maximum Settlement Fund is exhausted, the Settlement Payments will be reduced *pro rata*." Agreement at ¶ 6.2(1)(c). Due to the high number of claims that have been already submitted without a proof of purchase, Settlement Class Members without a proof of purchase will likely receive a gift card worth approximately $25.00.

9

*v. Dell Inc.*, No. C-07-01700 RMW, 2012 WL 1144303, at *1 (N.D. Cal. Apr. 4, 2012) ("Dell's elimination of allegedly false representations . . . conferred a benefit on both the class members and the public at large.") (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002) ("[i]ncidental or nonmonetary benefits conferred by the litigation" are factors in a fee application)). Indeed, there is intrinsic value in eliminating deceptive advertising. *Vizcaino*, 290 F.3d at 1047. There are also direct monetary savings from providing consumers with truthful information that will guide future purchases.

### D. The Claims Presented Serious Risk

The Settlement is particularly noteworthy given the combined litigation risks. As discussed, Defendants raised substantial and meritorious defenses. Success under these circumstances represents a genuine milestone.

Consideration of the "litigation risks" factor under *Camden I* "recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk. Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.'" *Sunbeam*, 176 F. Supp. 2d at 1336. Further, "[t]he point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988). "Undesirability" and relevant risks must be evaluated from the standpoint of class counsel as of the time they commenced the suit – not retroactively, with the benefit of hindsight. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir. 1976); Walco, 975 F. Supp. at 1473.

Prosecuting this Action was risky from the outset. Defendants were confident in their ability to defeat Plaintiffs' anticipated motion for class certification. The $883,000 Settlement Fund is substantial, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of Settlement. Any of these risks could easily have impeded, if not altogether derailed, this Action if it were not for Plaintiffs' and the Settlement Class' successful prosecution of these claims. The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiffs and Settlement Class Members through continued litigation could only have been achieved if: (i) Plaintiffs were able to certify a class and establish liability and damages at trial; and (ii) the final judgment was affirmed on appeal. The Settlement

is an extremely fair and reasonable recovery for the Settlement Class in light of Defendants' defenses, and the challenging and unpredictable path of litigation that Plaintiffs and the certified class would have faced absent the Settlement. Marron Decl. ¶ 17.

### E. Class Counsel Assumed Considerable Risk to Pursue this Action on a Pure Contingency Basis

In undertaking to prosecute this case on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. Marron Decl. ¶ 18. That risk warrants an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548); *In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent-fee basis, plaintiffs' counsel must be adequately compensated for the risk of non-payment).

Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee. The progress of the Action to date shows the inherent risk faced by Class Counsel in accepting and prosecuting the Action on a contingency fee basis. Despite Class Counsel's effort in litigating this Action, Class Counsel remains completely uncompensated for the time invested in the Action, in addition to the substantial expenses that were advanced. Marron Decl. ¶ 18. There can be no dispute that this case entailed substantial risk of nonpayment for Class Counsel.

### F. The Requested Fee Comports with Fees Awarded in Similar Cases

Counsel's requested fee of 31.9% of the Settlement Fund is within the range of fees typically awarded in similar cases. Numerous decisions within and outside of the Southern District of Florida and the Eleventh Circuit have found that a fee in the amount of one-third of the settlement fund is within the range of reason under the factors listed by *Camden I*. "[F]ederal district courts across the country have, in the class action settlement context, routinely awarded class counsel fees in excess of the 25 percent 'benchmark.'"[6] *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) (emphasis added); *Wolff v. Cash 4 Titles*, No. 03-22778- CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-

---

[6] *See also* 4 *Newberg on Class Actions*, § 14:6, at 551 (4th ed. 2002) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards); *In re: Terazosin Hydrochloride Antitrust Litigation*, 99-1317-MDL-Seitz, 2005 U.S. Dist. LEXIS 43082 (S.D. Fla. April 19, 2005) (awarding fees of 33.33 % of settlement); *In re: Managed Care Litig. v. Aetna,* MDL No. 1334, 2003 U.S. Dist. LEXIS 27228, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement); *Gutter v. E.I. Dupont De Nemours & Co.,* 95-2152-Civ-Gold, 2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003) (awarding fees of 33.33 % of settlement); *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33.33 % of settlement).[7]

### G. The Fee Request is Reasonable Using a Lodestar Cross Check

"In the Eleventh Circuit, a lodestar analysis may be used as a 'cross-check' to the percentage-of-the-fund analysis." *Marty v. Anheuser-Busch Companies, LLC*, No. 13-CV-23656-JJO, 2015 WL 6391185, at *2 (S.D. Fla. Oct. 22, 2015). However, the "use of the lodestar cross-check is not mandatory." *Id.* (citing *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362-63 (S.D. Fla. 2011)). To calculate lodestar, counsel's reasonable hours expended on the litigation are multiplied by counsel's reasonable rates. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Parker v. Time Warner Entertainment Co., L.P.*, 631 F. Supp. 2d 242, 264 (E.D.N.Y. 2009). Class Counsel's total combined lodestar here is $364,192.50, which is based on 642.5 total hours of work (589.6 attorneys hours, 6.5 law clerk hours, and 46.4 paralegal/legal assistant hours). *See* Marron Decl. ¶¶ 19, 21; O'Brien Decl. ¶ 14.

While a modest multiplier would be amply warranted here, Class Counsel seek *less than* their actual lodestar, resulting in a negative multiplier of .772, which will only decrease as they carry out their duties in effectuating the Settlement without additional fees.[8] *Velez v. Novartis Pharm. Corp.*, No. 04 CIV 09194 CM, 2010 WL 4877852, at *23 (S.D.N.Y. Nov. 30, 2010)

---

[7] *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D. Tex. 1999) (35.1%); *see also Gaskill v. Gordon*, 942 F. Supp. 382, 387-88 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998) (finding that 33% is the norm, and awarding 38% of settlement fund); *In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) (36%); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (33.8 %); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 498 (D.D.C. 1981) (45%); *Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.*, 480 F. Supp. 1195, 1199 (S.D.N.Y. 1979), *aff'd*, 622 F.2d 1106 (2d Cir. 1980) (approximately 53%).

[8] Class Counsel has not included their time expended for drafting Plaintiffs' Motion for Final Approval or the time expended for drafting this Motion for Attorneys' Fees, Costs, and Incentive Awards into their lodestar calculation. *See* Marron Decl. ¶ 26.

("[W]here 'class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower.'") (citations omitted). And, approval of the fee award sought under a lodestar cross-check should not be denied when it is less than the lodestar. *See id.* at \*23 ("[T]hat a low multiplier lodestar calculation yields a number approximating the percentage of fund number persuades the court that it is appropriate to award the full requested fee to plaintiffs' counsel."). This is especially true here, where a good recovery was obtained, including relief unavailable to plaintiffs at trial, there was significant risk, and all *Camden I* factors support the request.

### H. Class Counsel's Hourly Rates Are Reasonable and Have Been Approved by Numerous Federal and State Courts

Class Counsel's hourly rates are reasonable because they are in line with prevailing hourly rates charged by other attorneys of comparable experience, reputation, and ability for similar complex consumer protection class action litigation. Class Counsel's requested rates and hours are listed in their accompanying declarations showing work by timekeeper. *See also* Marron Decl. ¶ 19 & Table 1; O'Brien Decl. ¶ 14. To further assist the Court, Class Counsel have summarized their relevant experience in their accompanying declarations, exemplifying their vast experience and expertise in the area of complex consumer protection class action litigation, and setting forth examples of the hourly rates Class Counsel have been awarded in various other similar class action cases. Marron Decl. ¶¶ 2-4 & Ex. 1; O'Brien Decl. ¶¶ 2-10.

Here, the Court should affirm similar hourly rates that countless other federal and state courts have already approved for Class Counsel. Recently, the Marron Firm's hourly rates of $745 for Ronald A. Marron, $475 for Skye Resendes, $450 for Kas Gallucci, $440 for Michael Houchin and other associate attorneys, and $245 for law clerks were approved in *In re Tommie Copper Products Consumer Litigation*, Case No. 7:15-cv-03183-AT (S.D. N.Y.) (DE No. 127 (declaration in support of fee motion) & DE No. 129 (Final Approval Order)); Marron Decl., ¶ 31(a). In her Final Approval Order, the Honorable Analisa Torres found that the settlement was "entered into by experienced counsel and only after extensive, arms-length negotiations conducted in good faith and with the assistance" of a mediator. *In re Tommie Copper Products Consumer Litigation*, Case No. 7:15-cv-03183-AT (S.D. N.Y.) (DE No. 129); Marron Decl., ¶ 31(a).

The Marron Firm's hourly rates of $745 for Ronald A. Marron, $475 for Skye Resendes, $450 for Kas Gallucci, $440 for Michael Houchin and other associate attorneys, and $245 for law clerks were also approved in a class action concerning cosmetics products captioned *Elkind et al. v. Revlon Consumer Products Corporation*, Case No. 2:14-cv-02484-AKT (E.D. N.Y) (DE No. 125-2 (Declaration is Support of Fee Motion) & DE No. 131 (Final Approval Order)); Marron Decl., ¶ 31(b). In her Final Approval Order, the Honorable Judge Tomlinson stated that the settlement was "negotiated by highly capable and experienced counsel with full knowledge of the facts, the law and the risks inherent in litigating the Action and was the product of vigorously fought litigation." *See Elkind et al. v. Revlon Consumer Products Corporation*, Case No. 2:14-cv-02484-AKT (E.D. N.Y) (DE No. 131); ; Marron Decl., ¶ 31(b).

The Marron Firm's hourly rates of $745 for Ronald Marron, $475 for Skye Resendes and Alexis Wood, $450 for Kas Gallucci, $440 for William Richards and other associate attorneys, and $290 for law clerks, were approved by multiple state and federal court judges in three related dietary supplement tea cases. Marron Decl., ¶ 31(c)-(e). The first was *Perry v. Truong Giang Corp., Los Angeles Super. Ct.* Case No. BC58568, in which the Hon. Kenneth Freeman noted on August 6, 2015 that the hourly rates requested by Class Counsel were reasonable.

> [T]his case involved difficult legal issues . . . and . . . proving the difference between the price paid (around $2 per box of tea) and the actual value received would have been difficult since arguably some value was received (the tea itself). Additionally, . . . the attorneys displayed skill in researching and settling this case, which provides a benefit not only to Class Members but to the public at large, and that in so doing, the attorneys undertook significant risk by spending time on this litigation on a contingency basis.

Marron Decl., ¶ 13(c). Similarly, on August 7, 2015, in *In re Leaf123* (adversary proceeding of *Augustine v. Natrol*), No. 14-114466, the Hon. Brendan L. Shannon, U.S. Bankruptcy Judge for the District of Delaware, found the settlement in that case "fair, reasonable and adequate," which included an award of $799,000 in fees. Marron Decl., ¶ 31(e). And on November 16, 2015, the Hon. Maxine M. Chesney, Senior District Court Judge for the Northern District of California, approved the same hourly rates. Marron Decl., ¶ 31(c). The court found the Marron Firm's rates to be "reasonable in light of the complexity of this litigation, the work performed, Class Counsel's reputation, experience, competence, and the prevailing billing rates for comparably complex work by comparably-qualified counsel in the relevant market." *Id.*

On June 17, 2013, the Honorable Cormac J. Carney of the Central District of California approved an hourly rate of $610 for Mr. Cullin O'Brien. *Johnson v. General Mills*, No. SACV 10–00061–CJC(ANx), 2013 WL 3213832, at *3-*4 (C.D. Cal. June 17, 2013); O'Brien Decl., ¶ 12. Judge Carney noted that "The Court has considered class counsel's rates and finds they are reasonable because of the experience of the attorneys and prevailing market rates." O'Brien Decl., ¶ 12.

## VII. THE REQUESTED COSTS ARE FAIR AND REASONABLE

"It is well settled that counsel who create a common fund . . . are entitled to the reimbursement of [all reasonable] litigation costs and expenses . . . ." *Velez*, 2010 WL 4877852, at *23 (quoting *In re Marsh ERISA Litig.*, 265 F.R.D. at 150). Compensable items include, among others, photocopying, travel expenses, telephone costs, postage, deposition costs, service of process fees, and filing fees. *See Luessenhop v. Clinton Cnty.*, 558 F. Supp 2d 247, 271-72 (N.D.N.Y. 2008); *DiSorbo v. City of Schenectady*, No. 99-CV-1131 (LEK), 2004 WL 115009, at * 5 (N.D.N.Y. Jan. 9, 2004) (awarding airfare and hotel expenses); *Cioffi v. New York Community Bank*, 465 F. Supp. 2d 202, 217 (E.D.N.Y. 2006) (awarding filing fees, service costs, photocopying, costs of depositions, and subpoena fees); *Alnutt v. Cleary*, 27 F. Supp. 2d 395, 403-04 (W.D.N.Y. 1998) (awarding service of process fees). California's CLRA and Private Attorney General Statute also provide for the recovery of reasonable costs. *See* Cal. Civ. Code § 1780(e); Cal. Civ. Proc. Code § 1033.5.

Here, Class Counsel have together incurred a total of $18,776.22 in recoverable costs. Marron Decl. ¶ 20 & Table 2. All of Class Counsel's expenses were reasonable and necessary for the successful prosecution of this case. Accordingly, the Court should grant Class Counsel's full request for reimbursement of their costs. *See Bellifemine*, 2010 WL 3119374, at *7 ("[T]he costs. . . are reasonable, and therefore, Class Counsel should be reimbursed for these litigation-related expenses.").

## VIII. THE REQUESTED INCENTIVE AWARDS ARE FAIR AND REASONABLE

Pursuant to the Settlement, Class Counsel respectfully request, and Defendants do not oppose, Service Awards for the Class Representatives. Plaintiff Lisa Mollicone requests a service award in the amount of $5,000 and Plaintiff Land requests a service award in the amount of $3,000. Agreement at ¶ 8.3. Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah*

*Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010). Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. *See, e.g., Stallworth v. Monsanto Co.*, No. PCA 73-45. 198) U.S. Dist. LEXIS 12858, at *20-21 (N.D. Fla. June 26, 1980) (approving service awards ranging from $10,000 to $20,000 to four named plaintiffs, "each of whom devoted substantial time to the prosecution of th[e] lawsuit"); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the class warrants a substantial incentive award."); *Spicer v. Chicago Bd. Options Exchange, Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff).

The relevant factors include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *See, e.g., Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). These factors, as applied to this Action, demonstrate the reasonableness of the requested Service Awards to Plaintiffs. Marron Decl. ¶¶ 32-33. Plaintiffs provided substantial assistance that enabled Class Counsel to successfully prosecute the Action including submitting to interviews with Class Counsel, reviewing all material filings, including approving the Agreement, locating and forwarding responsive documents and information, and traveling to Miami to attend mediation. Marron Decl. ¶¶ 32-33. Plaintiffs were also prepared to devote additional time to deposition and to be available for trial, if necessary. In so doing, Plaintiffs were integral to forming the theory of the case, and litigating it through settlement. Marron Decl. ¶¶ 32-33. Plaintiff Lisa Mollicone requests an incentive award in the amount of $5,000 in light of her travel to Miami for her deposition, which lasted over six hours. Marron Decl. ¶ 33.

## IX.   CONCLUSION

Based on the foregoing, Class Counsel respectfully request that the Court award (1) $281,223.18 in attorneys' fees; (2) $18,776.72 in costs; (3) $5,000 to Plaintiff Mollicone as

an incentive award for her efforts in this action, and (4) $3,000 to Plaintiff Millie Land as an incentive award for her efforts in this action.

Dated: July 2, 2018                                        Respectfully submitted,

/s/ Cullin O'Brien

**CULLIN O'BRIEN LAW, P.A.**
Cullin O'Brien / Florida Bar 0597341
*cullin@cullinobrienlaw.com*
6541 NE 21 St Way,
Fort Lauderdale, FL 33308
(561) 676-6370
(561) 320-0285

**LAW OFFICES OF RONALD A. MARRON**
Ronald A. Marron (*pro hac vice*)
*ron@consumersadvocates.com*
Michael T. Houchin (*pro hac vice*)
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
Fax: (619) 564-6665
***Counsel for Plaintiffs and the Proposed Classes***

## CERTIFICATE OF SERVICE

     I HEREBY certify that on July 2, 2018, I electronically filed the foregoing document with the Clerk of the Court CM/ECF.

/s/*Cullin O'Brien*
CULLIN O'BRIEN