# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 17-21468-CIV-RNS

| | |
|---|---|
| LISA MOLLICONE and MILLIE LAND, on behalf of themselves, all others similarly situated, and the general public, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) ) |
| UNIVERSAL HANDICRAFT, INC., D/B/A "Deep Sea Cosmetics" d/b/a "Adore Organic Innovations;" and SHAY SABAG SEGEV, | ) ) ) ) ) ) |
| Defendants. | ) ) / |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE OBJECTION
BY PAMELA SWEENEY**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................................1

II. STANDARDS OF REVIEW .................................................................................................2

      A. The Reaction of the Class Is Dispositive as to Why the Settlement Is Fair, Adequate and Reasonable ...................................................................................2

      B. Sweeney Objection Is Unverified and Procedurally-Improper ..............................3

      C. Sweeney Does Not Understand that the Settlement Both Provides Critically-Important Promotional and Advertising Changes to an Allegedly False and Deceptive Product Campaign and Meaningful Restitutionary Relief to Class Members Who Nonetheless Benefitted from the Purchase and Use of Defendants' Products .......................................................4

III. CONCLUSION .....................................................................................................................6

Plaintiffs Lisa Mollicone and Millie Land ("Plaintiffs") respectfully oppose the objection by Pamela Sweeney ("Sweeney") and state as follows:

## I.     INTRODUCTION

Sweeney is a notorious serial objector to class action settlements who, along with her husband Patrick Sweeney, routinely file "frivolous" objections. *Rikos v. Proctor & Gamble Company*, Case No. 1:11-cv-226, 2018 WL 2009681, at *12-13 (S.D. Ohio Apr. 30, 2018); *see also Rawa v. Monsanto Company*, No. 4:17CV01252 AGF, 2018 WL 2389040, at *4 fn 2 (E.D. Mo. May 25, 2018) ("Plaintiffs bring to the Court's attention that Bandas and Sweeney are serial or 'professional' objectors whose objections numerous courts have found meritless.").

Serial objectors provide no benefit to the class nor to the Court. *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 n. 30 (S.D. Fla. 2011) ("[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing.") (citation omitted).

Instead, the motives of serial objectors, like Sweeney here, are transparent.  Sweeney is literally seeking "an incentive fee" from this Court. (Sweeney objection at pg. 5).  United States District Court Judge Zouhary succinctly characterized these motives, in reference to Sweeney's husband, as follows: "Their conduct here resembles scavenger ants on a jelly roll, scrambling to extort money from the approved settlements." *In re Polyurethane Foam Antitrust Litigation*, 178 F. Supp. 3d 635, 640 (N.D. Ohio 2016); *see also In re Barnes v. Fleet Boston Financial Corp.*, No. 01-10395, 2006 U.S. Dist. LEXIS 71072, at *3-4 (D. Mass Aug. 22, 2006) ("Repeat objectors to class action settlement can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements.").

This Court should not countenance Sweeney's conduct.  Indeed, Sweeney has not even properly shown that she is a member of the class with standing to object.  And for the reasons more fully stated below, this Court should summarily deny Sweeney's objection.

## II.     STANDARDS OF REVIEW

It is well settled that judicial policy favors voluntary settlement for resolution of class-actions. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).[1] "Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice." *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 538 (S.D. Fla. 1988) (internal citations omitted).

Thus, "[a] settlement can be fair notwithstanding a large number of class members who oppose it." *Cotton*, 559 F.2d at 1331. For that reason, objectors (especially serial objectors like Sweeney), carry a "heavy burden" to demonstrate that a settlement which has been preliminarily approved is unreasonable. *Ass'n. For Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002).

Indeed, as is the case here, "a small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Amoco Oil Co*., 211 F.R.D. at 467.

Sweeney, ***the lone objector to this Settlement***, has not met her heavy burden to demonstrate that the settlement is somehow unfair.

### A.     The Reaction of the Class Is Dispositive as to Why the Settlement Is Fair, Adequate and Reasonable

As detailed in Plaintiffs' motion for final approval, there is overwhelming support for this Settlement, as thousands of class members have made claims and have participated in the claims process. The lack of any meaningful opposition is a dispositive factor that the settlement is fair. *In re Checking Account Overdraft Litig*., 830 F. Supp. 2d at 1335 ("This extraordinarily "'low percentage of objections points to the reasonableness of a proposed settlement and supports its approval.'") (citation omitted); *see also Stoetzner v. United States Steel Corp*., 897 F.2d 115, 118-19 (3d Cir. 1990) (concluding that when "only" 29 members of a 281 person class [i.e., 10% of the class] objected, the response of the class as a whole "strongly favors [the] settlement"); *Cotton*, 559 F.2d at 1333 (settlement approval affirmed despite objections by half of the current employee class); *Elkins v. Equitable Life Ins. of Iowa*, No. CIVA96-296-CIV-7-17B, 1998 WL 133741, at *28 (M.D.

---

[1] Decisions by the former Fifth Circuit issued before October 1, 1981 are binding as precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Fla. Jan. 27, 1998) ("[t]here have been only six objections received from a Class of approximately 109,000 policy owners, which is a de minimus number" relative to the size of the class).

Put differently, ***the fact that Sweeney is the solitary objector where thousands of people have made claims*** ipso facto shows that the settlement is fair.

### B. Sweeney Objection Is Unverified and Procedurally-Improper

This Court should reject Sweeney's objection outright.

First, the Court set a deadline for filing an objection with the Court of July 2, 2018. Dkt. No. 120, at p. 6. However, Sweeney did not provide her objection by the July 2, 2018 deadline. Courts do not consider untimely objections. *In re Lithium Ion Batteries Antitrust Litig.*, 13-md-02420-YGR, 2017 WL 1086331, at *1 n.1 (N.D. Cal. Mar. 20, 2017) (striking as untimely an objection to a class action settlement filed after the deadline); *In re Beacon Assocs. Litig.*, No. 09 CIV. 3907 CM, 2013 WL 2450960, at *19 (S.D.N.Y. May 9, 2013) (overruling objection to a class action settlement "as untimely and grant[ing] the motion to strike it" where the objection was filed after the deadline).

Second, Sweeney did not sufficiently verify her objection. Contrary to this Court's order, Sweeney failed to provide an actual verification, under oath, of the date that she allegedly purchased the products at issue in this case. [Dkt. No. 120, pps. 4-7]. Without reliable proof that she is a class member, there is a legion of authorities showing that Sweeney has no standing to proceed as an objector. *See*, *e.g.*, *Feder v. Electronic Data Systems Corp.*, 248 Fed.Appx. 579, 581 (5th Cir. Sept. 25, 2007) ("Allowing someone to object to settlement in a class action based on this sort of weak, unsubstantiated evidence would inject a great deal of unjustified uncertainty into the settlement process."); *In re Deepwater Horizon*, 739 F.3d 790, 809 (5th Cir. 2014) (holding that the district court did not abuse its discretion in deeming objectors who did not substantiate their membership in the class to have waived and forfeited their objections to settlement); *Heller v. Quovadx, Inc.*, 245 Fed.Appx. 839, 842 (10th Cir. Aug. 28, 2007) ("It is undisputed that Mr. Karn . . . has never presented to this court or the district court any evidence suggesting membership, and therefore he has no standing to object under Rule 23."); *Miller v. Ghirardelli Chocolate Company*, No. 12–cv–04936–LB, 2015 WL 758094, at *10 ("The court finds that, in fact, all three objectors have failed to establish their standing to challenge the settlement."); *Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942, 974-75 (E.D. Tex. 2000) (noting that objector who failed to substantiate his membership in the class did not have "proper standing" to object to class action settlement).

Finally, and also contrary to this Court's order, Sweeney failed to list the cases in which she has previously objected. [Dkt. No. 120, pgs. 4-7]. Sweeney's lack of candor to this Court is calculated. Sweeney did not want this Court to know that there are nearly a dozen cases in which she has objected to class action settlements. Sweeney's failure to comply with the candor required by this Court's order is an independent basis upon which to deny the objection. *See In re Automotive Parts Antitrust Litig.*, 12-md-02311, et al., 2017 WL 3499291, at *7 (E.D. Mich. July 10, 2017) ("The Court 'has the inherent authority and discretion to strike filings and materials that do not comply with the Court's rules.'").

## C. Sweeney Does Not Understand that the Settlement Both Provides Critically-Important Promotional and Advertising Changes to an Allegedly False and Deceptive Product Campaign and Meaningful Restitutionary Relief to Class Members Who Nonetheless Benefitted from the Purchase and Use of Defendants' Products

This Settlement achieves **_both_** meaningful restitutionary relief **_and_** meaningful injunctive relief. Sweeney fails to appropriately characterize the former and completely ignores the latter.

Regarding the injunctive relief, Plaintiffs required Defendants to make significant and critical changes to Defendants' advertising campaign, including eliminating terms like "proven," "breakthrough," "live," and "most advanced anti-aging science available today" from their advertising and promotion. Plaintiffs alleged that Defendants used these terms in their advertising and promotion to commit false advertising. Getting a corporate defendant to change its product advertising and promotional campaign, in the face of allegations of false advertising, is an extremely commendable and difficult feat. Plaintiffs have literally prevented Defendants from continuing the allegedly false advertising to the public at large and future consumers, and this is perhaps the most important function that class actions can serve. *See*, *e.g.*, *Marty v. Anheuser-Busch Companies, LLC*, No. 13-cv-23656-JJO, 2015 WL 6391185, at *2 (S.D. Fla. Oct. 22, 2015) ("Under Eleventh Circuit law, injunctive changes such as label modifications represent a benefit to the class and should be considered when approving a class settlement."); *Wilson v. EverBank*, NO. 14-CIV-22264-2016 WL 457011, at *11 (S.D. Fla. Feb. 3, 2016) ("courts rightly consider the value of injunctive and monetary relief together in assessing whether a class action settlement provides sufficient relief to the class."); *Hamilton v. SunTrust Mortg. Inc.*, No. 13–60749–CIV, 2014 WL 5419507, at *12 (S.D. Fla. Oct. 24, 2014) ("The Court finds the injunctive changes provided in the Settlement Agreement are important and have significant value to the class members nationwide."); *David v. American Suzuki Motor Corp.*, No. 08–CV–22278, 2010 WL 1628362, at *4 (S.D. Fla. Apr. 15, 2010) ("The

4

Settlement in this case avoids conflicts of interests because each member Settlement Class member will benefit from the extended warranty provisions of the Settlement, and all members of the Settlement Class will be entitled to some compensation in the form of purchase and service credits."); *Carter v. Forjas Taurus, S.A.*, 701 Fed.Appx. 759, 767 (11th Cir. June 29, 2017) ("The court found . . . the settlement gave value to the class, as well as promoted public safety by removing allegedly defective weapons from the public.").

Thus, the injunctive relief provided by this Settlement that benefits the public at large and future consumers of Defendants' products would alone justify Plaintiffs' requested award of $300,000 in attorneys' fees. *See*, *e.g.*, *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 629 (11th Cir. July 16, 2015) ("The record, as the district court acknowledged, makes clear that Gillette's decision to stop selling and marketing Ultra batteries with the challenged statements on the packaging was motivated by the present litigation. . . .Thus, we conclude that the district court's valuation of the nonmonetary relief was supported by the record."); *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1295-1296 (11th Cir. 1999) ("[N]o case has held that a district court must consider only the actual payout in determining attorneys' fees."); *accord In re Sauer- Danfoss Inc. S'holders Litig.*, 65 A.3d 1116, 1141 (Del. Ch. 2011) (listing fee awards for achieving corporate disclosures); *accord Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 (1970) (awarding attorneys' fees where "[t]he dissemination of misleading proxy solicitations was a 'deceit practiced on the stockholders as a group,' and the expenses of petitioners' lawsuit have been incurred for the benefit of the corporation and the other shareholders.").

But the Settlement does not just have injunctive relief that benefits the public at large and future consumers of Defendants' products. The Settlement also has restitutionary relief worth up to $375,000 for class members who received and used Defendants' products. Specifically, the Settlement allows class members who can prove their purchases through receipts or email order confirmations the option of up to $25 in cash or $200 in gift cards. The Settlement even allows for a $50 gift card for those class members who cannot submit receipts proving their purchases. This is significant and meaningful restitutionary relief for class members, especially since Defendants strongly argued that Plaintiffs and the class suffered no harm and no damages given that they purchased, received, and used products that had actual value. *Compare*, *e.g.*, *Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati*, 715 So. 2d 311, 314 (Fla. 4th DCA 1998) (plaintiff failed to establish market value for the purposes of establishing a diminished value at purchase); *Maroone*

*Chevrolet, Inc. v. Nordstrom*, 587 So. 2d 514 (Fla. 4th DCA 1991) (holding that an actual loss must be shown prior to recovery under Florida's deceptive trade practices act and entitlement to nominal damages is not enough).

That is, Defendants vociferously argued that Plaintiffs and the class could not provide a rational basis to recover actual damages, even assuming arguendo that there was false advertising, given that the products received and used by Plaintiffs and the class benefitted them. To be sure, there is no allegation that use of the products caused physical harm to Plaintiffs and the class. Thus, despite Defendants untested arguments that Plaintiffs and the class suffered no actual damages, and the uncertainty of how this Court would construe much less accept a damages model, class members can nonetheless attain restitutionary value of up to $375,000.

Importantly, moreover, Plaintiffs ensured that there would be a robust and meaningful notice program so that the class can obtain this restitutionary relief. The thousands of class members who have, thus far, made claims and have participated in the claims process underscores the importance of the notice that Plaintiffs secured for the class.

### III. CONCLUSION

Sweeney fails to meet her heavy burden to show that this Court should to decline to grant final approval to the presumptively reasonable Settlement. Sweeney is a known serial objector who is attempting to extract an "incentive fee" for herself by hijacking the Settlement with a frivolous objection. Sweeney does not have standing to object and, moreover, the objection is procedurally-invalid on many grounds, including since it violates this Court's order. Substantively, Sweeney does not understand the Settlement, including the meaningful restitutionary relief for past purchasers of Defendants' products and the meaningful injunctive relief that benefits the public at large and future consumers of Defendants' products.

The bottom line is that this Settlement is squarely within the types of Settlements approved by Courts in the 11th Circuit. *See*, *e.g.*, *Anheuser-Busch Companies*, 2015 WL 6391185, at *2 ("Under Eleventh Circuit law, injunctive changes such as label modifications represent a benefit to the class and should be considered when approving a class settlement."). Therefore, this Court should overrule Sweeney's objection, grant Plaintiffs' motion for final approval, and grant Plaintiffs' unopposed request for $300,000 in attorneys' fees. *See*, *e.g.*, *Gillette Co.*, 618 Fed. Appx. at 629 ("The record, as the district court acknowledged, makes clear that Gillette's decision to stop selling and marketing Ultra batteries with the challenged statements on the packaging was motivated by the

present litigation. . . .Thus, we conclude that the district court's valuation of the nonmonetary relief was supported by the record."); *Waters*, 190 F.3d at 1295-1296 ("[N]o case has held that a district court must consider only the actual payout in determining attorneys' fees.").

Dated: July 20, 2018                               Respectfully submitted,


                                                   */s Cullin O'Brien*

                                                   **CULLIN O'BRIEN LAW, P.A.**
                                                   Cullin O'Brien / Florida Bar 0597341
                                                   6541 NE 21 St Way,
                                                   Fort Lauderdale, FL 33308
                                                   (561) 676-6370
                                                   (561) 320-0285
                                                   *cullin@cullinobrienlaw.com*

                                                   **LAW OFFICES OF RONALD A. MARRON**
                                                   Ronald A. Marron
                                                   *ron@consumersadvocates.com*
                                                   Michael T. Houchin
                                                   *mike@consumersadvocates.com*
                                                   651 Arroyo Drive
                                                   San Diego, CA 92103
                                                   Telephone: (619) 696-9006
                                                   Fax: (619) 564-6665

                                                   *Class Counsel*

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on July 20, 2018, I electronically filed the foregoing document with the Clerk of the Court CM/ECF.

 /s *Cullin O'Brien*
Cullin O'Brien
